STATE of Tennessee, Appellant,

v.

Sterling Lee HODGES, Appellee.

STATE of Tennessee, Appellant,

v.

Leonard AMBROSE, Appellee.

Supreme Court of Tennessee,
at Nashville.

Aug. 5, 1991.

Charles W. Burson, Atty. Gen. & Reporter Kymberly Lynn Ann Hattaway, Asst. Atty. Gen., Nashville, Ron Davis, Asst. Dist. Atty., Franklin, for appellant.

Roger Reid Street, Franklin, for appellee, Hodges.

Lonnie Hoover, Franklin, for appellee, Ambrose.

OPINION

O'BRIEN, Justice.

In these consolidated cases each of the defendants entered guilty pleas in the trial court. Both occurred in Williamson County with different judges in each case. At the individual sentencing hearings the trial judge reduced the sentence which had previously been agreed upon at the guilty plea proceedings.

The State appealed the trial court judgment to the Court of Criminal Appeals on the issue of whether the trial court erred in *sua sponte* reducing the sentences of defendants, where said sentences were imposed by the agreement of the parties and with prior judicial approval. The Court of Appeals affirmed the trial court judgment, with one judge dissenting. The State filed an application for appeal to this Court, which was granted. The issue is now before us for disposition.

The issue before us is purely of a legal nature. However, there are some variations in each case which warrant a summary for the purpose of clarification.

## STERLING LEE HODGES

On 9 May 1988 the Williamson County Grand Jury returned a ten-count indictment against the defendant, and three (3) others, charging burglary of an automobile while employing a firearm, grand larceny, concealing stolen property, possession of burglary tools, possession of marijuana and possession of drug paraphernalia. A motion for suppression of evidence was filed. A guilty plea agreement was made whereby the district attorney general would recommend a four-year sentence for auto burglary subject to request for a suppression hearing. The other three defendants did not pursue the suppression hearing. Hodges proceeded with a hearing. On his guilty plea, the State made a recommendation of five (5) years on each of two counts of auto burglary, to be served concurrently in the Department of Corrections. The guilty plea submission was accepted by the trial court. A suspended sentence hearing was scheduled for 17 October 1988.

The actual hearing came on 31 October 1988. The inquiries and comments of the trial judge at that hearing are noteworthy. In the course of the direct examination defendant stated he had agreed to a five (5) year sentence, whereas the other individuals involved received four (4) year sentences, based on the fact that they did not participate in the suppression hearing. At that juncture the trial judge asked defendant's counsel if application was being made for a reduction of sentence. He received a negative reply. In response to a second inquiry from the court defense counsel said "Yes, sir, in that instance we'll apply for a reduction in sentence." At the conclusion of the evidence and arguments of counsel the trial judge said, "On Mr. Hodges application to reduce the sentence, I felt that I really should have taken care of this the day that he entered his plea. I don't think a person should be penalized for exercising their constitutional rights. I think Mr. Hodges was. Actually, he was penalized in such a way that everybody else in the case was going to get the benefit of it if he had been successful and he didn't. I will reduce the sentence to four (4) years as with the other defendants."

## LEONARD AMBROSE

Ambrose was indicted on 11 October 1988 for burglary, assault with intent to commit first degree murder with bodily injury, assault with the intent to commit rape and aggravated sexual battery. On 13 February 1989 the trial court approved a negotiated plea of guilty to first degree burglary and sexual battery with a recommended sentence of ten (10) years and two (2) years to be served concurrently in the State Penitentiary. After a hearing the court pronounced sentence according to the State's recommendation. Upon being reminded by defense counsel that a sentencing hearing had been requested, it was set for 10 April 1989.

In the course of the sentencing hearing a request was made for strict probation to include a course of treatment for alcoholism. At the conclusion of the hearing the trial judge recalled a much earlier case, in which he was the prosecuting attorney, where it developed that Mr. Ambrose was a crucial witness for the State. He left his place of employment in Nashville to testify at the District Attorney's request. The judge remarked that the defendant had made a very favorable impression on him at that time. While he could not grant probation after reviewing the evidence in this case, he suggested that, if application was made he would reduce the sentence to

six (6) years to be served in the Williamson County Workhouse. He did not think Mr. Ambrose ought to go to the penitentiary. That suggestion was accepted and the sentence was amended accordingly.

The opinions of the Court of Criminal Appeals in each case are virtually identical. The dissenting opinion in *Hodges*, which came down a week after the *Ambrose* opinion was filed, is a bit more comprehensive. The Court of Criminal Appeals noted that the appeal did not question the correctness of the trial court's action, but only challenged his power to act at all. It was held that Rule 35(b), Tenn.R.Crim.P., governed the action of the trial court. The court further held that Tenn.R.Crim.P. 11, as it related to plea bargaining, had absolutely nothing to do with the authority of a trial judge to reduce a sentence after it is imposed, or probation is revoked.

Rule 35(b) provides in pertinent part:

"(b) **Reduction of sentence.**—The trial court may reduce a sentence upon application filed within 120 days after the date the sentence is imposed or probation is revoked.... A motion for reduction of sentence under this rule may be denied by the trial judge without a hearing. If the application is denied, the defendant may appeal ... if the sentence is modified, the state may appeal as otherwise provided by law. A modification can only be as to any sentence the court could have originally imposed."

■ The State argues that the trial court's action, on its own motion, in altering the terms of the agreed upon sentences at the probation hearing, essentially removed the district attorney general from the plea negotiations and interjected the court as a party to the negotiations.

■ There is no substance to this argument which is made without the benefit of any sustaining authority. The statement is correct that it is only where the district attorney general and the defendant have reached an agreement and have presented their agreement to the trial court, that the judge is authorized to act in any manner with respect to the plea agreement. At that juncture the only alternatives open to the court are to accept or reject the agreement. However, to extend that statement to its ultimate analysis, once the court has accepted a plea agreement the district attorney general has no further authority in the proceedings. A guilty plea represents a break in the change of events which has preceded it in the criminal process. Once a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel did not meet appropriate standards. *See Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). The acceptance of the guilty plea is equally conclusive as to the State. The proceedings are in the exclusive jurisdiction and control of the court. The district attorney may appear at a subsequent sentencing hearing and present evidence relevant to the issue of sentencing, however, the sentence is to be imposed by the court. T.C.A. § 40–35–203. Any other procedure would be an encroachment on the judicial process.

The State argues here that the Court of Criminal Appeals erred in determining that the trial courts were empowered to *sua sponte* alter the defendant's sentences, where said sentences were imposed by agreement of the parties and with prior judicial approval. It is the State's position that the plea agreements in this case were entered into pursuant to Tenn.R.Crim.P. 11(e)(1)(C). That the trial court was empowered only to accept or reject the agreement at the submission hearings, or to defer a decision pending completion of a presentence report. In each of these cases the respective trial court accepted the plea agreement and sentenced the defendants accordingly. Thus the court was bound by its decision under the provisions of Rule 11(e)(3). It is earnestly insisted, had the judge rejected the plea agreement the par-

ties would have been restored to the positions they occupied prior to the submission hearings in accordance with Rule 11(e)(4). It is argued that, at the sentencing hearing, in each case, the trial judge placed himself in a role which could only be occupied by the district attorney general, citing *State v. Turner*, 713 S.W.2d 327 (Tenn.Cr. App.1986). The action of the trial court in each case is termed even more egregious because the courts in each case had previously accepted the negotiated pleas. The argument concludes with the assertion that the trial courts were without authority to alter the terms of the defendants' sentences.

The State further takes the position that the Court of Criminal Appeals reliance upon Tenn.R.Crim.P. 35(b) is erroneous because the rule clearly pertains to sentences imposed without agreement of the parties. It is asserted that the Court of Criminal Appeals, by its action, has abrogated the binding nature of sentences imposed pursuant to plea agreements.

The State's appeal and its argument are completely without merit. There is absolutely no connection between the plea bargaining procedures prescribed in Tenn. R.Crim.P. 11 and the correction or reduction of sentence provisions of Tenn. R.Crim.P. 35. The respective trial judges set sentencing hearings in each of these cases in accordance with T.C.A. § 40–35–203. Under the prescribed procedure in that statute upon a verdict or *plea of guilty*, the court shall set and conduct a sentencing hearing. The judge may, in a case where the sentence is agreed upon by the district attorney general and the defendant, and accepted by the Court, immediately impose sentence. No specific sentencing hearing or pre-sentence report are required unless the judge, in his discretion, directs that such report be prepared. If there is a hearing, evidence may be presented by both the defendant and the district attorney general on any matter relevant to the issue of sentencing. That is the extent of the participation of the district attorney general at such a hearing. Although, under the statutes in force at the time of sentencing in these cases, a sentence imposed under Chapter 35 of Title 40 was required to conform to the mandate of T.C.A. § 40–37–203(f), there is no such restriction connected with the procedures for correction or reduction of sentence under Tenn.R.Crim.P. 35(b). The trial court may reduce a sentence upon application filed within 120 days after the date the sentence is imposed. The trial judge may act without a hearing. The only action of the State involved is the right to appeal as otherwise provided by law if the sentence is modified.

The State's appeal of the reduction of sentence at the sentencing hearing in each of these cases is inconsistent with its prior recognition of the role of Rule 35(b) in the sentencing procedure. *See State v. Biggs*, 769 S.W.2d 506, 509 (Tenn.Cr.App.1988), in which the defendant had entered a guilty plea and subsequently applied for probation. It was argued by the State that defendant's motion to reconsider a denial of probation was not tantamount to a request to reduce. The court held to the contrary. The Court reached the conclusion that a motion for reconsideration of probation was in effect a Rule 35 request for a reduction of sentence, and the proper procedural remedy for the relief sought.

▪ The intent of Rule 35(b) is to allow modification in circumstances where an alteration of the sentence may be proper in the interest of justice. The Massachusetts Supreme Judicial Court has summarized these conditions thusly:

> Occasions inevitably will occur when a conscientious judge, after reflection or upon receipt of new probationary reports or other information, will feel that he has been too harsh or has failed to give weight to mitigating factors which properly should have been taken into account. In such cases the interest of justice and sound judicial administration will be served by permitting the trial judge to reduce the sentence within a reasonable time. *District Attorney v. Superior Court*, [342 Mass. 119] 172 N.E.2d [245], 250–251.

The rule permits modification of sentences and applies in cases where the conviction has been on a *guilty plea* and is extensive enough to grant probation in lieu of imprisonment as a reduction of sentence. *See Biggs, supra* at p. 509. Moreover, it is a judicial function, in the decision of which the district attorney general has no voice or participation, except in the discretion of the court. In an early case this Court said, "... [T]hat the attorney-general had no power over the final judgment of this court, ... or in any way to interfere without the assent of the court first had, was beyond anything that belonged to the duty of the attorney general. The officers of court must learn where duty with them commences and ends. The court will see to the execution of her judgments, and treat arrangements interfering with them as nullities or contempts, according to circumstances." *Bennett v. State*, 10 Tenn. (Yeager Vol. 2) 472, 475 (1830).

■ The Tennessee Rules of Civil Procedure, along with Rules of Criminal Procedure and the Rules of Appellate Procedure, are "laws" of this state, in full force and effect, until such time as they are superseded by legislative enactment or inconsistent rules promulgated by this Court and adopted by the General Assembly. *See Tennessee Department of Human Services v. Vaughn*, 595 S.W.2d 62, 63 (Tenn. 1980).

It results that it makes little or no difference whether the plea agreement was reached between the District Attorney General and the defendant and/or his counsel under the auspices of Rule 11(e)(1)(A), (B) or (C) insofar as the application of Rule 35(b) is concerned. It does appear in this case from the language of the plea agreements that the parties were proceeding under the auspices of Subsection (B) since the attorney general made a recommendation to the court in each case, which is a far cry from agreeing that a specific sentence is the "appropriate disposition" of the case in a type (C) agreement. More attention to the particular language used in such agreements would forestall any confusion about the matter.

■ There is no obligation on the part of the State to offer any benefit or advantage to the defendant by reason of entering a guilty plea. Aside from any agreement which may exist between the State and a defendant in reference to the entry of a guilty plea, the ultimate decision to accept or reject any such plea is to be made by the trial court and, if so accepted and received by the court, the final determination on the extent of the punishment to be meted out is the province of the trial court. *See Williams v. State*, 491 S.W.2d 862, 867 (Tenn.Cr.App.1972).

The judgment of the Court of Criminal Appeals affirming the trial court is affirmed by this Court. The costs are assessed against the State.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHTREY, J., dissents in separate opinion.

DAUGHTREY, Justice, dissenting.

In these two unrelated cases, the trial judges, acting on their own initiative, reduced sentences that had been proposed as part of plea agreements between the state and the defendants. The issue is whether a trial judge has such authority. The majority holds that Rule 35(b) of the Tennessee Rules of Criminal Procedure gives the trial court unfettered discretion to modify a sentence entered pursuant to a guilty plea, on the theory that "[t]here is absolutely no connection between the plea bargaining procedures prescribed in Tenn.R.Crim.P. 11 and the correction or reduction of sentence provisions of Tenn.R.Crim.P. 35." In my judgment, the majority has reached this conclusion without recognizing an inherent conflict between the two rules. I write separately to underscore my belief that we cannot resolve these two cases unless we harmonize the provisions of Rule 11(e) and Rule 35(b).

In both cases, the defendants pleaded guilty, and the trial judges imposed the sentences recommended by the prosecutors pursuant to announced plea agreements. In each instance, the trial judge reset the

case to a later date for a hearing on the defendant's request for probation. Also in each instance, the trial judge ultimately denied probation but unilaterally reduced the sentence imposed at the earlier hearing.

In Hodges's case, the trial judge expressed his concern at first hearing that state had recommended a five-year sentence, rather than the four-year sentence recommended for Hodges's co-defendants, solely because Hodges had filed a motion to suppress and insisted upon a suppression hearing. At the final sentencing hearing, the trial judge again expressed his feeling that the defendant was being treated unfairly and reduced his sentence to four years.

In Ambrose's case, the trial judge ultimately reduced the defendant's ten-year sentence to six years, on the ground that Ambrose had cooperated with the state in the prosecution of an unrelated case, tried some years earlier when the judge was district attorney.

The state appealed both these reductions and now seeks relief from the judgment of the Court of Criminal Appeals affirming them. The crux of the state's complaint is that it lost the benefit of its bargain with each of the defendants when the trial court unilaterally reduced the recommended sentence. The state argues that it had held up its side of the agreement by making significant concessions with regard to the charged offenses in each case, and that the trial court lacked authority to relieve the defendant of his agreement, under Rule 11(e). The defendants argue in response that modification is authorized by Rule 35(b).

The majority holds, first, that the language of Rule 35(b) permits unilateral reduction by the court, despite the fact that the original sentences were a matter of agreement between the parties, and despite the state's objection to the reduction. The majority further holds that "once the court has accepted a plea agreement the district attorney has no further authority in the proceedings" and that the "acceptance of the plea is ... conclusive as to the State," citing T.C.A. § 40–35–203. Subsection (a)

of that statute gives the trial court the authority to pass sentence on the defendant. Subsection (b) makes a presentencing report and separate hearing discretionary with the court when "the sentence is agreed upon by the district attorney general and the defendant and accepted by the Court." No other provision in § 40–35–203 appears to be directly relevant to the issue in this appeal. Certainly, there is nothing in that section of the code which gives a trial judge the inherent, unfettered authority to sentence a defendant who pleads guilty, regardless of any agreement made between the parties. If such authority exists, it must be found elsewhere.

1. *Authority to reduce under Rule 11(e).* As the history of our criminal procedure will record, plea bargaining was once a clandestine affair that was largely carried on "in the closet." When a guilty plea was entered, the defendant would routinely assure the judge that he had not been promised anything in exchange for his plea. Nothing, of course, could have been further from the truth. Reason finally prevailed over hypocrisy, and the decision was made to bring the plea bargaining process out of the closet and into the open. The new procedure was first enshrined in the federal procedural rules, Fed.R.Crim.P. 11(e), and later copied verbatim in the Tennessee rules. In pertinent part, Tenn. R.Crim.P. 11(e), governing "plea agreement procedure," provides as follows:

(1) In General.—The district attorney general and the [defense] attorney ... may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty ... to a charged offense or to a lesser related offense, the district attorney general will do any of the following:

(A) Move for dismissal of other charges; or

(B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) Agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

(2) Notice of Such Agreement.—If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court ... at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement pursuant to subdivision (e)(4), or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request[,] the defendant nevertheless has no right to withdraw his plea.

(3) Acceptance of a Plea Agreement.—If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) Rejection of a Plea Agreement.—If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court ... that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea ... the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

Thus, the first step in analyzing the propriety of the modification in these two cases is to determine whether the plea agreements were type (B) or type (C) pleas. In a type (B) situation, both parties agree to a non-binding recommendation, and the ultimate determination of the specific sentence is left to the court. The court must warn the defendant that he has no right to withdraw the plea if the recommended sentence is not imposed. A separate sentencing hearing is contemplated. See Tenn. C.A. § 40–35–203(a)–(b).

By contrast, a type (C) agreement includes a specific sentence and leaves the court discretion only to accept or reject the sentence, either when the plea is submitted or after examination of the presentence report. "If the agreement is accepted the terms of the agreement become binding and enforceable." *State v. Todd,* 654 S.W.2d 379, 382 (Tenn.1983). If it is rejected, the defendant must be given an opportunity to withdraw his plea. *Id.*

The possibility of a hybrid plea does exist. According to the Committee Comments to Tenn.R.Crim.P. 11, a single plea agreement may encompass both type (B) and type (C) aspects. To illustrate this point, the Committee offered the following example.

The State may agree that in exchange for plea to burglary the State will recommend four years and that at the time of the sentencing hearing the State will recommend probation but the latter is a non-binding recommendation. Two separate agreement have thus been made. The first, the four years, is an (e)(1)(C) agreement. The defendant's plea is wholly contingent on his getting exactly four years. The sentence is not binding on the court but the alternative to rejection of the sentence agreement is a potential withdrawal of the plea. The second agreement, the recommendation of probation, is, under this example, an (e)(1)(B) agreement. The plea is contingent only on the State's recommendation of probation and not on probation actually being granted. If the court denies probation the defendant cannot withdraw his plea.

Neither the rule itself nor the comment addresses the question of the trial court's authority to impose a sentence *more favorable* to the defendant than that recommended by the state. However, we do know what the federal law on this point is, and we have the Committee's conclusion that in interpreting the provisions of Tennessee's Rule 11, "uniformity of procedure with the federal courts ... is beneficial to the public and to the legal profession."

Although Fed.R.Crim.P. 11, like Tenn. R.Crim.P. 11, does not expressly address the issue, it is clear that the federal rule does not authorize the trial court to modify a type (C) sentence at the time it is submitted. In order to protect the government's bargain, Congress deleted proposed language that would have permitted the court to impose "a more favorable" sentence instead of the agreed one. *See United States v. Semler*, 883 F.2d 832, 833–834 (9th Cir.1989); C. Wright, Federal Practice and Procedure Criminal 2d § 175.1 and note 44 (1982). If we honor the Tennessee Rules Committee's admonition to interpret our Rule 11 in conformity with federal procedure, we would have to hold that a trial judge in Tennessee may not impose a reduced sentence based on a type (C) plea agreement.

2. *Authority to reduce under Rule 35(b)*. Rule 35(b), quoted in full in the majority opinion, gives the trial court the discretionary authority to *"reduce* a sentence *upon application* filed within 120 days after the date the sentence is imposed or probation is revoked." (Emphasis added.) The rule does not specifically provide that only the defendant can make such an application. However, it assumes this by providing that "[i]f the sentence is modified, the state may appeal...." *It is significant to note that there is no provision for reduction by the court acting on its own initiative.*

To date, there have been no Tennessee cases interpreting the provisions of Rule 35(b). Looking once again to the federal rules in this area for guidance, as the drafters of the Tennessee rules directed us to do, we find that Fed.R.Crim.P. 35(b), in its current version, is much narrower than the Tennessee rule. Since its last amendment, effective November 1, 1987, Fed.R.Crim.P. 35(b) provides that a federal district court, "on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense." The sentence may be lowered "to a level below that established by statute as a minimum

sentence" for the offense involved, but it can be reduced only at the government's request and only for the very limited reason stated in the new rule.

Prior to its 1987 amendment, however, the federal rule was similar to its Tennessee counterpart and obviously supplied the model for our Rule 35(b). The prior federal rule provided, in pertinent part, that "[a] motion to reduce a sentence may be made, *or the court may reduce a sentence without motion*, within 120 days after the sentence is imposed...." (Emphasis added.)

For the purpose of deciding the cases before us, there is obviously one significant difference between the former federal rule and the current Tennessee rule. Under Tenn.R.Crim.P. 35(b), no provision is made for unilateral action by the trial court. The language of the rule requires an "application" for reduction. In defendant Hodges's case, the trial judge circumvented this requirement by inviting the defense attorney to move for reduction. In defendant Ambrose's case, the trial judge did not even bother to engage in a subterfuge. He simply reduced the agreed sentence by four years. Even if we were to overlook this procedural defect, there is the additional problem of whether Rule 35(b) gives the trial judge the power to modify a type (C) plea agreement, despite the obvious intention to the contrary that is evident in Rule 11(e)(1), (3) and (4). Because resolution of this issue necessarily involves an interpretation of Rule 11, it is appropriate to examine federal law on this subject.

3. *The interrelation of the two rules.* In the leading (and perhaps the only) federal case to address this specific question, the Ninth Circuit, construing the former version of federal Rule 35(b) and its relation to Rule 11(e), held that modification of an agreed sentence in a type (C) situation was possible, but only in very limited circumstances:

The legislative history of 11(e)(3) shows that Congress wished to preclude a district court from accepting a plea agreement [under 11(e)(1)(C)] which provides for a specific sentence and then imposing

a more lenient sentence than that provided for in the plea agreement.

\* \* \* \* \* \*

Since Congress intended to prohibit district courts from sentencing defendants to sentences less severe than those provided for in [type (C)] plea agreements, it seems reasonable to assume that Congress also intended to prohibit district courts from using Rule 35(b) *after sentencing* to reduce sentences imposed in accordance with [type(C)] plea agreements.

\* \* \* \* \* \*

[However, t]he version of Rule 35(b) which applies in this case [*i.e.,* the pre–1987 amendment version] does not include any limitations on the types of cases in which a district court has the authority to reduce a sentence.... The goal of Rule 35(b)—to ensure that the sentence is reasonable and just in light of information that becomes available in the months immediately following sentencing—makes as much sense in the context of Rule 11(e)(1)(C) plea bargain cases as it does in the context of other cases.

\* \* \* \* \* \*

We conclude that a district court has the authority under the old version of Rule 35(b) ... to reduce a [type (C)] sentence ... in exceptional cases. The government's view that Rule 35(b) never permits the reduction of a sentence entered pursuant to a Rule 11(e)(1)(C) agreement is plainly inconsistent with the broad language and purpose of Rule 35(b) and is not directly mandated by Rule 11 ... Nonetheless, because Congress in enacting Rule 11(e)(3) intended to protect prosecutors' bargains, we conclude that Rule 35(b) permits a district court to reduce a [type (C)] sentence ... only in those exceptional cases where the sentence is plainly unjust or unfair in light of the information the district court received after sentencing the defendant.

*United States v. Semler,* 883 F.2d 832, 833, 834–835 (9th Cir.1989) (emphasis in original).

The *Semler* compromise appears to provide as much harmony between Rules 11(e) and 35(b) as we are likely to develop. It sits squarely upon a middle ground, equidistant between giving the trial court no discretion to modify, as a literal reading of Rule 11(e)(3) and (4) would suggest, and giving the court unfettered authority to modify, as the majority in this case would ascribe to Rule 35(b). It allows the trial court to protect against unfairness to the defendant in the exceptional case, but also gives the state the benefit of its bargain in the routine case. The remaining question is what result the adoption of *Semler* would require in these two cases.

4. *Application of the rule in Semler.* As the majority notes, in neither case does the record before us indicate explicitly whether the proposed plea was a type (B) or type (C) agreement. The circumstances suggest strongly, however, that both were hybrids of the type described by the drafters of Tenn.R.Crim.P. 11(e). That is, the state's agreement with each defendant as to the length of sentence fell under subsection (1)(C), but the state withheld recommendation on the question of probation, bringing that aspect of the agreement within subsection (1)(B). From this conclusion, it follows that the trial judges were authorized to make their own determination of the defendants' suitability for probation, but not to *reduce* the length of the proposed sentences over the state's objection—unless there were exceptional circumstances to support the reductions.

One problem, under *Semler,* is that the information which led to reduction in both cases was presumably known to the trial judge at the time the defendant's guilty plea was submitted and accepted by the court. Hence, technically speaking, it does not qualify in either case as "information received after sentencing." Indeed, there was really no "after sentencing" period involved here—sentencing in both cases occurred in two stages and the final sentencing order was not rendered until probation was denied at the recessed hearing. More significantly, there is a question of whether the sentences imposed on Ambrose and Hodges were "plainly unjust or unfair." It

is certainly possible to make this argument for Hodges, who received an extra year merely for putting the state to the trouble of a suppression hearing. But as to Ambrose, the argument has a hollow ring. The trial judge was obviously trying to reward Ambrose for his prior cooperation in a case personally handled by the judge, but the state may well have taken this fact into account in making its offer. In any event, in a type (C) plea situation, the trial judge should not be able to lighten an agreed sentence merely out of personal acquaintance with or sympathy for the defendant.

Thus, applying the rule in *Semler*, as I think we should, I would hold that there is no basis for modification of the agreed sentence in Ambrose's case. The case as to Hodges is closer, although there are adequate reasons for holding that his sentence also should not be modified.

Whatever other lessons may be drawn from the opinions emanating from this appeal, one point seems clear. It would behoove the district attorneys of Tennessee to become familiar with the distinction between type (B) and type (C) plea agreements, to be more specific with regard to which type they are proposing to the trial courts, and to set out on the record the conditions under which a type (C) plea is being proposed. Otherwise, the integrity of their plea agreements will be jeopardized by the majority's current ruling that the trial courts in these two cases had unfettered discretion under Rule 35(b) to modify the proposed sentences and thus deprive the state of the benefit of its agreement with the defense. Without some care, the result will be the obliteration of the distinction between subsections (1)(B) and (1)(C) of Rule 11(e). The only hope is that the majority's current fuzziness in distinguishing type [B] and [C] agreements will allow the Court to recognize and enforce the provisions of Rule 11(e) in future cases.

In the meantime, the majority's opinion will obviously have an adverse impact on the state's position in the plea bargaining context. At first blush, however, it would not seem to affect the defendant's interest adversely. It permits indiscriminate reduction of an agreed sentence in the defendant's favor, but cannot diminish the defendant's constitutional protection against the possibility of a court-initiated *increase* in his sentence, which was recognized in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). That case guarantees a defendant specific performance of the agreement made by the prosecution during plea negotiations or, alternatively, the right to withdraw his guilty plea and proceed to trial in the event of a breach. While the state can claim no concomitant constitutional right to specific performance of its plea agreement with a defendant, procedural fairness demands that it be provided with a level playing field. The provisions of Rule 11(e) constitute an attempt to achieve a measure of parity. We should be very cautious in permitting the use of judicial authority under Rule 35(b) to destroy that parity.

For if the superficial effect of today's ruling is apparently favorable to a defendant, from the defense perspective the long-range effect is nevertheless troubling: A prosecutor who has no guarantee that a plea agreement will be honored by the trial court may be unwilling to enter negotiations in the first place. Thus, the majority's opinion may well have an adverse affect on the nature and extent of plea bargaining as it is currently practiced in Tennessee, unless all parties concerned take steps to ensure that that practice is brought into strict conformity with Rule 11(e)(1).

Because I believe that Rule 35(b) should not be held to cripple the provisions of Rule 11(e), but instead should be read in harmony with them, I respectfully dissent from the majority's opinion in these two cases.