Martha Craig Daughtrey, Justice
We granted permission to appeal and consolidated these three cases for argument in order to determine the scope of authority of an appellate court to alter the terms of a sentence that was imposed as the result of an agreed guilty plea in the trial court. For the reasons set out below, we conclude that under our rules of procedure, an appellate court is not permitted to change the terms of an agreed sentence on its own motion, when the sentence is not a disputed issue on appeal. Because each of the three cases came to us in a slightly different posture, we will treat the procedural history of each of them individually. Our analysis, however, applies generally to all three cases.
In Hargrove, the defendant pleaded nolo contendere to two counts of assault with intent to molest a child, in conformity with a plea bargain agreement reached between Hargrove and the prosecution. As part of the agreement, the state withdrew other charges against the defendant, recommended consecutive sentences of four years on each charge, and took no position on the question of probation. At a later hearing, the trial court suspended all but two years of the agreed eight-year sentence.
The defendant appealed the trial court's judgment, contending that the entire sentence should have been suspended. The Court of Criminal Appeals, acting on its own motion, noted that the events leading to the charges against Hargrove had actually occurred in 1971 and 1972 and held that the sentences imposed by the trial judge were erroneous under the code provisions in effect at the time of the offenses. The intermediate court likewise held that partial suspension of a sentence was not possible at the time the offenses were committed.[1] As a result, the Court of Criminal Appeals set aside the trial court's judgment and remanded the case for resentencing -- without addressing the issue raised on appeal, i.e., whether or not the defendant was entitled, on the merits, to full suspension of his agreed sentence. The message to the trial court was, in effect: because of the date of the offenses, the length of the sentence must be reduced and partial probation of the type ordered in this case is not an available option. Of course, in undoing the trial court's judgment, the reviewing court effectively destroyed the plea agreement reached by the prosecution and defense prior to entry of the nolo contendere pleas.
*865 In Lyles, the second of the three cases, the defendant entered seven guilty pleas over a two-day period, again as the result of a negotiated plea agreement. In conformity with the agreement, the trial court imposed seven two-year sentences on Lyles, all but one of which were to run concurrently with each other, for an effective sentence of four years. Apparently there was no agreement on the question of probation. The trial court declined to suspend the sentence, and the defendant appealed only the denial of probation.
The Court of Criminal Appeals upheld the denial of probation, but sua sponte reduced three of the convictions to lesser offenses and adjusted the resulting sentences downward, from two years to 11 months and 29 days. The reduction did not affect Lyles's overall sentence, however.
In Hensley, the last of the three cases, the defendant pleaded guilty to two counts of casual exchange of marijuana, and the trial court imposed consecutive sentences of 11 months and 29 days on each charge. Although the record is not clear, it appears that the state was prepared to recommend to the trial court that all but 30 days of this sentence be suspended. However, before this announcement could be made, the trial judge learned from questioning the defendant that Hensley was unwilling to name his supplier. As a result, the trial judge denied probation, and the defendant appealed, alleging that the failure to suspend his sentence made the penalty "excessive."
On review of the trial court proceeding, the Court of Criminal Appeals held that Hensley should not have been considered ineligible for probation merely because he refused to name his supplier. Based on this conclusion, the intermediate court could have simply remanded the case for imposition of an order of probation, instead, the court also reduced the effective sentence against Hensley, by ordering that his two sentences be served concurrently rather than consecutively, as had been provided by the trial court's judgment.
The state has appealed in these cases, contending that the Court of Criminal Appeals exceeded its authority in reducing the sentence to be served by each of the defendants. We agree. The dispositive fact in two of the cases -- and apparently in the third case as well -- is that the sentences imposed in the trial court were the result of negotiations by the state and the defendant and, upon agreement, were recommended by the state in return for the defendant's waiver of the right to trial and entry of a guilty plea to a specified offense.
The Tennessee Rules of Appellate Procedure distinguish between appeal of a sentence in a criminal case and appeal "from an order denying or revoking probation." The latter is allowed without condition by Rule 3(b)(2), but the same rule permits a defendant to "seek[ ] review of his sentence" only if"there was no plea agreement concerning his sentence...."
We think the import of this limitation is clear -- a defendant may not appeal a sentence imposed as the result of an agreed plea arrangement. The only question remaining is whether the appellate courts have the authority to raise sua sponte what the defendant himself cannot raise, and to grant relief sue sponte that a defendant is prohibited from seeking. The state speculates that in reducing the sentences in these cases on its own motion, the intermediate appellate court may have relied on our recent opinion in State v. Hodges, 815 S.W.2d 151 (Tenn. 1991), in which we held that a trial court has limited authority to reduce an agreed sentence under Tennessee Rules of Criminal Procedure 35(b).
*866 If so, we have several pertinent observations concerning the Hodges decision and its application to the cases now before us. The first is the most obvious, and that is that Rule 35(b) is, by its own terms, applicable only to the trial courts. Secondly, reduction under Rule 35(b) must be sought "by application" -- the rule does not contemplate spontaneous reduction by the trial court of the defendant's sentence. Finally, as the opinion in Hodges suggests, the scope of Rule 35(b) is limited in those cases in which the defendant has pleaded guilty by agreement with the state, in exchange for a specific sentence.[2]
Such plea negotiations are governed by Rule 11(e) of the Rules of Criminal Procedure. Under subsection (1)(C) of Rule 11(e), the state is authorized to reach an agreement "that a specific sentence is the appropriate disposition" in exchange for the defendant's agreement to "enter[ ] a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense." Tennessee Rule of Crim. Pro. 11(e)(1)(C). The trial court may then accept the plea under the terms of the announced agreement, including the agreed sentence, or reject the plea and "afford the defendant the opportunity to then withdraw his plea." Rule 11(e)(3) and (4). There is no provision in Rule 11(e) that permits the trial court to alter the agreement if the plea is being entered under subsection (1)(C).
Hence, even if the analysis in Hodges were applicable to appellate as well as trial courts, the alteration of the defendant's sentences by the Court of Criminal Appeals in Hargrove and Lyles would not have been valid. The same conclusion appears to pertain in the Hensley case as well, because the record implies -- but does not establish -- that the sentence imposed on the defendant was the result of a plea agreement with the state. The uncertainty in Hensley results from the fact that a transcript of submission hearing was not included in the record on appeal, an omission that we surmise was deliberate, given that the trial court's denial of probation was the only matter raised in the Court of Criminal Appeals. In order to clarify the matter, however, and avoid any possibility of mistake, we conclude that the Hensley case should be remanded to the trial court for the entry of an order of clarification, setting out whether or not the guilty pleas Hensley entered in the trial court were submitted pursuant to Rule 11(e)(1)(C).
The judgments of the Court of Criminal Appeals in Hargrove and Lyles are set aside, and the judgments of the trial courts in both cases are reinstated. That part of the judgment of the Court of Criminal Appeals in Hensley that affects the length of the defendant's sentence is reversed; the remainder of the judgment is affirmed, and the case is remanded to the trial court for a redetermination on the question of probation, as ordered by the Court of Criminal Appeals, and for clarification of the type of guilty plea submitted by the *867 defendant, in conformity with the instructions in this opinion.
CONCUR: Reid, C.J. Drowota, Anderson, JJ.
DISSENT: O'Brien, J.
DISSENTING OPINION
CHARLES H. O'BRIEN, JUSTICE
I must take Issue with several of the points made in the majority opinion suggesting that in State v. Hodges, 815 S.W.2d 151 (Tenn. 1991), we held that the trial court has limited authority to reduce an agreed sentence under Tenn.R.Crim.P. 35(b).
In Hodges we specifically said "a guilty plea represents a break in the change of events which has preceded it in the criminal process. Once a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occur prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel did not meet appropriate standards. See Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). The acceptance of the guilty plea is equally conclusive as to the State. The proceedings are in the exclusive jurisdiction and control of the Court. The District Attorney may appear at a subsequent sentencing hearing and present evidence relevant to the issue of sentencing, however, the sentence is to be imposed by the Court. T.C.A. $ 40-35-203. Any other procedure would be an encroachment on the judicial process." (Emphasis supplied).
I cannot rationalize the statement made in the majority opinion that " Hodges makes clear, the scope of Rule 35(b) is very limited in those cases in which the defendant has pleaded guilty by agreement with the State, in exchange for a specific sentence," with the language of Hodges stating: "There is absolutely no connection between the plea bargaining procedure prescribed in Tenn.R.Crim.P. 11 and the correction or reduction of sentence provisions of Tenn.R.Crim.P. 35... The intent of Rule 35(b) is to allow modification in circumstances where an alteration of the sentence may be proper in the interest of justice ... The rule permits modification of sentences and applies in cases where the conviction has been on a guilty plea and is extensive enough to grant probation in lieu of imprisonment as a reduction of sentence. ... Moreover, it is a judicial function, in the decision of which the district attorney general has no voice or participation, except in the discretion of the court. ... It results that it makes little or no difference whether the plea agreement was reached between the district attorney general and the defendant and/or his counsel under the auspices of Rule 11(e)(1)(A),(B) or (C) insofar as the application of Rule 35(b) is concerned.
I have no argument with the observation made in the majority opinion that Rule 35(b) is, by its own terms, applicable only to the trial courts. Beyond that, there is no reason for a discussion of the rule since none of the appeals involved are based on an application of the rule.
Insofar as Hargrove's appeal is concerned I am in accord with the State's argument that defendant has failed to complete his record in order to effect his appeal. It is the defendant's duty to prepare the record on appeal for review of sentencing issues. State v. Miller, 737 S.W.2d 556, 559 (Tenn. Cr. App. 1987) ; p.t.a. denied, (Tenn. 1987). I am also of the opinion the sentencing agreement made *868 between defendant and the attorney general is governed by this Court's decision in State v. Mahler, 735 S.W.2d 226 (Tenn. 1987). The State took no position on probation in the plea agreement and the trial court decision was judicially sound.
I concur in the result reached in the case of Nelson Lyles. I cannot agree with the analysis in the case of Tim Hensley for the reasons heretofore stated.

This proposition would appear to be supported by a narrow reading of T.C.A. § 40-35-117(c), governing applicability of the Criminal Sentencing Reform Act of 1989 to crimes occurring before July 1, 1982. It also appears, however, that a broad reading of the aspirational portions of the Act would indicate that the trial court was acting in furtherance of the purposes announced by the legislature in reforming the sentencing laws of Tennessee, and that the split sentencing order should not be overturned in the absence of an objection to it by the state. See T.C.A. §§ 40-35-102 -104.

The majority in Hodges noted that "[i]t does appear in this case from the language of the plea agreements that the parties were proceeding under the auspices of Subsection (B) since the attorney general made a recommendation to the court in each case, which is a far cry from agreeing that a specific sentence is the 'appropriate disposition' of the case in a type (C) agreement. More attention to the particular language used in such agreements would forestall any confusion about the matter." 815 S.W.2d at 159. The call for closer attention to the wording of plea agreements necessarily Implies that a properly drafted type (C) agreement should be treated differently from a type (B) plea agreement despite the court's earlier assertion that "it makes little or no difference whether the plea agreement [falls under] the auspices of Rule 11(e)(1)(A), (B) or (C) insofar as the application of Rule 35(b) is concerned." Id.