IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2020

## STATE OF TENNESSEE v. JAVIAN JAKEIL HAWKINS

**Appeal from the Circuit Court for Montgomery County**
**No. CC-2017-CR-551      Jill Bartee Ayers, Judge**

_____

### No. M2019-01020-CCA-R3-CD

_____

The Defendant, Javian Jakeil Hawkins, appeals from his twenty-five-year sentence imposed for his second degree murder conviction, contending that the trial court abused its discretion by imposing the maximum in-range sentence and by denying his motion to reduce sentence pursuant to Tennessee Rule of Criminal Procedure 35. Following our review, we affirm; however, we remand for correction of a clerical error on the judgment form.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Stephanie Ritchie Mize, Clarksville, Tennessee, for the appellant, Javian Jakeil Hawkins.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Robert J. Nash and Art Bieber, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND[1]

This case arises from the November 3, 2016 shooting death of Julie Ann Rosario. On May 1, 2017, the Montgomery County Grand Jury indicted the Defendant and two co-

---

[1] Because the only issues on appeal relate to sentencing and the complete trial transcript is not included in the record, we will only recount those facts necessary to review the trial court's sentencing determinations. Moreover, we deem the record sufficient for our review notwithstanding its incompleteness.

defendants, Reginald Lamar Pope and Kymber Rosann Green,[2] for premeditated first degree murder, felony first degree murder, and two counts of especially aggravated kidnapping. See Tenn. Code Ann. §§ 39-13-202, -305.

Co-defendant Green testified at the Defendant's trial that co-defendant Pope sold drugs and that on the day of the incident, co-defendant Green saw co-defendant Pope arguing with the victim on the street; co-defendant Pope was confronting the victim about money she owed him. Co-defendant Green asserted that she and co-defendant Pope hit the victim and that after she and co-defendant Pope brought the victim to the Defendant's apartment, co-defendant Pope continued to beat the victim with the Defendant's pistol and threatened to kill her during a period of hours. Co-defendant Green averred that the Defendant helped co-defendant Pope bind the victim's hands and lead her out of the apartment. The Defendant later returned and relayed to co-defendant Green that co-defendant Pope attempted unsuccessfully to strangle the victim and that the Defendant had hit the victim with a rock in another unsuccessful attempt to kill her, during which the victim's blood got onto the Defendant's clothing. The Defendant went into the bathroom to shower.

Eventually, another man came to the apartment to buy drugs and told the trio that a woman was sleeping behind the building; co-defendant Pope took one of the Defendant's knives and left the apartment. Co-defendant Green stood on the apartment balcony and saw co-defendant Pope stab the victim and drag her to a different location. According to co-defendant Green, the Defendant wanted to shoot the victim, but co-defendant Pope warned him that the noise would attract attention. However, when the Defendant protested that he did not want co-defendant Pope to use more of the Defendant's belongings to attempt to kill the victim, the three co-defendants went outside, and co-defendant Green saw the Defendant shoot the victim once in the head.

The victim's autopsy reflected that she sustained a gunshot wound to the head; two deep stab wounds and several superficial cuts to the torso; and multiple blunt-force injuries to the head, torso, and hands, including bruises, abrasions, and lacerations. The bruising to the victim's hands was consistent with a person's trying to defend herself against "some sort of blunt attack." The stippling present around the gunshot wound indicated that the shot was fired from two to three feet away. The medical examiner testified that the victim was alive at the time she was shot. The victim's blood contained two types of antidepressants, an antihistamine, cocaine, and cocaine metabolites. The cause of death was "sharp- and blunt-force injuries and [a] gunshot wound of the head," and the manner of death was homicide.

---

[2] The record reflects that the co-defendants were tried separately.

After a jury trial, the Defendant was convicted in Count 1 of the lesser-included offense of second degree murder. See Tenn. Code Ann. § 39-13-210. The jury acquitted the Defendant of the remaining charges.

At the May 6, 2019 sentencing hearing, the State noted during its recitation of the proof at trial that the Defendant also made incriminating statements to the police about his "finish[ing] what they started" by shooting the victim when his co-defendants would not.

The Defendant testified at the hearing that he "c[a]me to show pure sympathy of the case and the crime at hand" and show his remorse for the victim's death. He stated that during his childhood, he lived in several states, that he and his mother experienced homelessness and slept in "trucks and stuff like that," that he avoided getting into trouble by playing basketball and musical instruments, but that his living conditions "kind of kept [him] in harm's way[.]" The Defendant said that he participated in "JROTC" for three years in high school and played on the school basketball team.

The Defendant stated that after being pulled over in a car containing marijuana and alcohol, he was sent to "Columbia" and was expelled from school due to truancy. The Defendant said that at Columbia, he attended "a court-ordered school called TLC" and also played basketball there. The Defendant averred that he began to get into trouble because he "was more around people that [got] in trouble a lot[.]" He said that he joined the "HI-STEP" program, in which he took standardized tests but did not attend school. The Defendant stated that he failed one test and had to wait one year to retake it, during which time he "started hanging around the wrong crowd," including an ex-girlfriend who "made [him] pick up on drinking and smoking weed more[.]" The Defendant said that he was staying in a high-crime area and that he "ended up being charged with this crime."

The Defendant testified that in jail, he graduated from the HI-STEP program, began attending a daily Bible study, and petitioned the jail to offer an Alcoholics Anonymous program to inmates. The Defendant noted that his incarceration "messed up" his opportunity to join the Marine Corps, which was his plan if playing basketball "didn't take [him] . . . where [he] needed it to take [him]."

The presentence report reflected that the Defendant had one prior conviction in Montgomery County for criminal trespass in October 2016, as well as an active warrant for misdemeanor failure to appear in Robertson County and a pending case in Robertson County for traffic-related offenses. The Defendant reported having a juvenile record for "simple possession truancy" that the presentence report officer was unable to confirm. The Defendant also reported having been expelled from school in eleventh grade after accruing too many disciplinary "points" for minor infractions. The Defendant further stated that he began drinking alcohol at age fourteen and that at the time of the offense, he frequently became intoxicated, which caused him to "put himself in bad situations" and be less aware

of his surroundings. The Defendant also reported using marijuana, synthetic marijuana, codeine, and Xanax around the date of the incident. Relative to his mental health, the Defendant reported having had nightmares "similar to the instant offense" and some anxiety, for which he was taking medication.

Relative to enhancement factors, the State argued that the victim was in a physically vulnerable position when the Defendant killed her. See Tenn. Code Ann. § 40-35-114(4). Upon questioning by the trial court, the State agreed that the Defendant possessed a firearm during the commission of the offense and that enhancement factor (9) was applicable. See Tenn. Code Ann. § 40-35-114(9).

Relative to mitigating factors, the Defendant argued that he had no prior criminal history other than a "misstep" relative to possession of marijuana as a juvenile, that he was employed at the time of his arrest and had "transferrable work skills," and that he had community and family support available upon his release. The Defendant noted that he graduated from high school and participated in programs while in jail and that he had no "write-ups."

The Defendant requested that the trial court apply mitigating factor (12), that he acted "under the domination" of co-defendant Pope, who was almost thirty years old at the time of the offense, brought the victim to the Defendant's apartment, beat and stabbed the victim, and left her to die. See Tenn. Code Ann. § 40-35-113(12). The Defendant averred that co-defendant Pope possessed a gun during the incident and that no reason existed to believe that the Defendant could have stopped co-defendant Pope.

The Defendant also argued that he lacked substantial judgment due to his youth and not having "the life experience to understand the consequences of this action," and that he "committed the offense under such unusual circumstances that it [was] unlikely he had a sustained intent to violate the law." See Tenn. Code Ann. § 40-35-113(6), (11). The Defendant argued that if co-defendant Pope had not beaten the victim nearly to death, he would not "have gone out and finished it[.]" The Defendant also noted that the situation "was spiraling quickly" and that his having been under the influence of drugs mitigated his responsibility because it "impacted his judgment" in his feeling "like he was compelled to end [the victim's] sufferings." See Tenn. Code Ann. § 40-35-113(8).

The trial court noted that it considered the evidence at trial, the presentence report, the principles of sentencing, and the parties' arguments, the nature and characteristics of the criminal conduct involved in this case, the evidence regarding enhancement and mitigating factors, statistical information with regard to sentencing practices for similar offenses, and the Defendant's statement. The court found that the Defendant was a Range I, standard offender, and that the sentencing range for a Class A felony was fifteen to twenty-five years.

The trial court applied enhancement factor (4), that the victim was particularly vulnerable because of physical disability, because the victim was "in a very vulnerable situation" after having been beaten and "left for dead" when the Defendant "made the choice to shoot her." See Tenn. Code Ann. § 40-35-114(4). The court also found that possession of a firearm was not an element of second degree murder and that enhancement factor (9) was consequently applicable. See Tenn. Code Ann. § 40-35-114(9).

The trial court found that mitigating factor (6) related to the Defendant's lack of substantial judgment because of his youth was inapplicable. The court noted that despite the Defendant's being eighteen years old, the proof established that "he made a very conscious choice to basically go do what the other people could not do[.]" The court found that the Defendant's voluntary intoxication was not a defense and that mitigating factor (8) was inapplicable. The court stated that according to evidence presented at a pretrial hearing on a motion to suppress, no proof established that the Defendant was under the influence of drugs at the time of the murder; the court noted that at the time of his police interview, the Defendant was "completely coherent." The court further noted that the defense had not argued that the Defendant was suffering from mental health issues at the time of the incident. The court further declined to apply mitigating factor (11), finding that the Defendant "made an overt, intentional act to violate the law to go kill this victim." The court similarly declined to apply mitigating factor (12), stating that no proof suggested that co-defendant Pope was "directing" events, only that co-defendant Pope "started the event" and that the Defendant "went out on his own and finished what [co-defendant] Pope could not."

The trial court noted its concern in light of the applicable enhancement factors and lack of mitigating factors that the Defendant "just took this upon himself to go out and end [the victim's] life." The court found that the Defendant had "an absolute disregard for life . . . and that is a dangerous criminal." The court imposed the maximum sentence of twenty-five years. The judgment was entered and file-stamped on May 6, 2019; the record does not reflect that a motion for new trial was filed.

On June 6, 2019, the Defendant filed a Rule 35 motion for reduced sentence. He arguing that the imposition of the maximum in-range sentence was "unduly harsh" without "a finding of applicable mitigating factors" and that the trial court erroneously applied enhancement factor (9), that the Defendant possessed a firearm during the commission of the crime.[3]

On August 8, 2019, the trial court held a hearing on the motion to reduce sentence. The Defendant argued that his sentence should be reduced in light of his youth and lack of knowledge of the criminal justice system due to his not having a "significant prior

---

[3] Defense counsel subsequently withdrew the latter argument, conceding that enhancement factor (9) was properly applied.

[criminal] history[.]" The State responded that the Defendant was living independently and that during the offense, the Defendant initially showed "very good judgment" by choosing not to participate; however, after another person informed the co-defendants that the victim was still alive, the Defendant picked up his gun, walked outside, and killed her. The State averred that the Defendant's statement that he "finished what they started" indicated his awareness of the situation.

The trial court found that although no "bright line" test existed regarding how youth should be considered in mitigation, the Defendant was living independently and "fairly successful in a drug business"; the Defendant knew what was happening while the victim was beaten; and when the Defendant learned the victim was alive, he "made a real specific decision" to kill her instead of calling for help. The court noted that the Defendant's comment "that he was going to finish what these other people couldn't" was "a strong decision made on his part." The court noted that it had already considered these facts in sentencing and denied the motion. The court also entered a written order filed on October 16, 2019.

The Defendant filed a notice of appeal on June 7, 2019, appealing the length of his sentence. A handwritten note on the notice of appeal read, "FedEx 6/6/19." In any event, the notice of appeal was due on June 5, 2019. After the State filed its appellate brief on April 9, 2020, arguing that the Defendant had waived his issue because the notice of appeal was untimely, the Defendant filed an April 22, 2020 motion requesting this court to accept the late-filed notice of appeal. This court granted the motion by written order dated April 24, 2020; this court also noted that the motion indicated the Defendant's intent to appeal the denial of his Rule 35 motion, which required a separate notice of appeal.[4] This court instructed defense counsel to file a separate notice of appeal within thirty days of the order.

The Defendant subsequently filed a notice of appeal relative to the Rule 35 motion on May 20, 2020. This court consolidated both appeals for our consideration.

## ANALYSIS

_____

[4] This court explained,

> In order to seek appellate review, though, a separate notice of appeal must be filed. A Rule 35 motion is not one of the post-judgment motions which tolls the deadline for filing notice of appeal. Tenn. R. App. P. 4(c). Thus, the notice of appeal on file in this case cannot be deemed to incorporate an appeal of the order denying the Rule 35 motion. The trial court denied the Rule 35 motion five months after entry of final judgment in this case. Although a separate notice of appeal is required in this situation, this [c]ourt will routinely consolidate a direct appeal of a final judgment with an appeal from the denial of a Rule 35 motion. Tenn. R. App. P. 16(b).

## I.       *Length of Sentence*

On appeal, the Defendant contends that the trial court abused its discretion by imposing the maximum in-range sentence, arguing that the court erred by declining to find any applicable mitigating factors and by applying enhancement factor (4). The Defendant states that co-defendant Pope, not the Defendant, caused the victim's physical vulnerability at the time the Defendant shot her. The Defendant further argues that the maximum sentence is not the least severe measure necessary, citing his lack of criminal history, low risk of recidivism, and "substantial progress towards rehabilitation" in jail. The State responds that the Defendant waived this issue for failure to timely file his first notice of appeal.

Relative to the State's waiver argument, the State recounts in its brief that the trial court "entered judgment against the [D]efendant on March 26, 2019" and that the Defendant consequently filed his first notice of appeal forty-seven days past the deadline. However, this statement is misleading because the March 26, 2019 entry date only applied to the counts for which the Defendant was acquitted. Our review of the record indicates that the Defendant's judgment of conviction in Count 1 was entered on May 6, 2019, meaning that the notice of appeal was only filed one day late. As noted above, this court granted the Defendant's motion to accept the late-filed notice of appeal in the interest of justice. We will, therefore, consider this issue on its merits.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (h) the results of a validated risk needs assessment included in the presentence report. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 245 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous.

Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

We note that the Defendant's argument regarding application of enhancement factor (4) and the failure to apply numerous mitigating factors is without merit. Misapplication of an enhancement or mitigating factor no longer "invalidate[s] the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Bise, 380 S.W.3d at 706. In any event, the record supports the court's application of enhancement factor (4); we note that the Defendant cites to no authority, and we can find none, for the proposition that the Defendant must have contributed to or created the victim's vulnerable physical state in order for factor (4) to apply.

Nevertheless, the trial court also applied enhancement factor (9) related to the Defendant's using a gun during the commission of the offense, and the Defendant conceded at the Rule 35 motion hearing that factor (9) was properly applied. As previously stated by this court, "the application of a single enhancement factor can justify an enhanced sentence." State v. John M. Banks, No. M2019-00017-CCA-R3-CD, 2020 WL 5015888, at *10 (Tenn. Crim. App. Aug. 25, 2020), (citing State v. Bolling, 75 S.W3d 418, 421 (Tenn. Crim. App. 2001)). Moreover, we note that the trial court would have been within its discretion to impose a maximum in-range sentence even in the absence of applicable enhancement factors so long as the court's reasoning was consistent with the purposes and principles of sentencing. See State v. Wesley Lynn Hatmaker, No. E2017-01370-CCA-R3-CD, 2018 WL 2938395, at *6 (Tenn. Crim. App. June 8, 2018) (quoting State v. Christopher Scott Chapman, No. M2011-01670-CCA-R3-CD, 2013 WL 1035726, at *9 (Tenn. Crim. App. Mar. 13, 2013) (citing Bise, 380 S.W.3d at 706; Carter, 254 S.W.3d at 345-46)).

Relative to the Defendant's argument that his sentence is excessive due to his lack of a criminal record and his progress in confinement, we reiterate that this court will uphold a trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. As detailed above, the trial court found two applicable enhancement factors and no applicable mitigating factors. See Tenn. Code Ann. §§ 40-35-113, -114(4), (9). In addition, the court considered all of the appropriate purposes and principles of sentencing and found that the Defendant's lack of respect for human life rendered him a dangerous criminal, implicitly finding that extended confinement was necessary to protect society from the Defendant. The court spoke at length about the disturbing circumstances of the offense, upon which the court appears to have placed great weight. In particular, the court was concerned by the Defendant's decision to execute the victim after several hours of observing co-defendant Pope torture her; we note that co-defendant Green's testimony indicated that the Defendant assisted co-defendant Pope by binding the victim's hands, escorting her outside with co-defendant Pope, and beating her

with a rock. The record supports the court's determination that the Defendant's decision to kill the victim was deliberate and measured and that the maximum sentence was justified. The Defendant is not entitled to relief on this basis.

## II.     *Motion for Reduced Sentence*

The Defendant contends that the trial court erred by denying his Rule 35 motion for reduced sentence, arguing again that the court should have applied several mitigating factors instead of imposing the maximum sentence. The State responds that no error occurred.

Tennessee Rule of Criminal Procedure 35(a) provides that a defendant may petition the trial court for a reduction of sentence within one hundred and twenty days of the entry of judgment or the revocation of probation. Rule 35 allows for the modification of a sentence when appropriate in the interest of justice. State v. Hodges, 815 S.W.2d 151, 154 (Tenn. 1991). Our standard of review on appeal is whether the trial court abused its discretion in denying a defendant's motion for reduction of sentence. State v. Irick, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993).

The Defendant's motion requesting a reduced sentence cited the same facts considered by the trial court at the sentencing hearing. We again note that issues relative to the application or failure to apply an enhancement or mitigating factor is not grounds for this court to disturb a sentencing determination. As stated above, the court's findings at the sentencing hearing were supported by the record, and a maximum-length sentence was justified based upon the circumstances of the offense. The court did not abuse its discretion by denying the Rule 35 motion. The Defendant is not entitled to relief on this basis.

## III.     *Clerical Error*

The judgment in Count 1, second degree murder, contains two checked boxes in the section denoting release eligibility. The first box refers to Code section 40-35-501(i), which, in relevant part, mandates one hundred percent service for second degree murder sentences; this box is applicable to the Defendant's sentence. The second checked box refers to Code section 40-35-501(u), which is not applicable to convictions for second degree murder. We direct the trial court to enter a corrected judgment removing the checked box relative to Code section 40-35-501(u).

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.  The case is remanded for the entry of a corrected judgment.

_____
D.  KELLY THOMAS, JR., JUDGE