IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 28, 2016 Session

## STATE OF TENNESSEE v. DAVA MARTIN

**Appeal from the Criminal Court for Bradley County**
**No. 13CR462C      Sandra Donaghy, Judge**

_____

**No. E2015-01814-CCA-R3-CD – Filed August 22, 2016**

_____

The Defendant-Appellant, Dava Martin, was convicted by a Bradley County jury of one count of casual exchange of a controlled substance. See T.C.A. § 39-17-418. Martin received a sentence of eleven months and twenty-nine days, suspended to supervised probation after sixty days' incarceration, and a $2,000 fine. She subsequently filed a motion to reconsider her sentence, which the trial court interpreted as a motion for a reduction of sentence pursuant Tennessee Rule of Criminal Procedure 35, and, following a hearing, the motion was denied. The sole issue raised on appeal is whether the trial court improperly denied Martin's motion for sentence reduction. Upon review, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Kenneth L. Miller, Cleveland, Tennessee, for the Defendant-Appellant, Dava Martin.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; R. Steven Bebb, District Attorney General; and Dallas Scott, III, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This appeal stems from an exchange of prescription narcotics in a Walgreens Pharmacy parking lot in Bradley County. In relation to this offense, Martin and her codefendant boyfriend, Randall Evans, were indicted on one count of conspiracy to sell and deliver a Schedule III controlled substance, a Class E felony, and one count of the sale or delivery of a Schedule III controlled substance, a Class D felony. A jury trial began on February 25, 2015, at which time the following evidence was adduced.

On February 10, 2013, Agents Dave Jones and Shawn Fairbanks of the Tenth Judicial District Drug Task Force were conducting surveillance of the Walgreens Pharmacy on 25th Street in Cleveland, Tennessee. A gold, four-door, Ford F-150 driven by Randall Evans pulled into the parking lot, and Martin exited from the passenger side, walked inside the pharmacy, and returned carrying a white prescription bag. Shortly thereafter, Martin's daughter, Britney Lane, and Lane's boyfriend, Jeremy Kimsey, pulled next to Evans's truck in a white Chevrolet Cavalier. Kimsey, who had been driving, got out of the white car and into the backseat of Evans's truck, and Martin exited the truck and got into the car with Lane.

At that time, Agent Jones was sitting in the parking lot of the CVS Pharmacy across the street and could see inside the front windshield of Evans's truck. He testified at trial that he did not see Martin hand anything to anyone before exiting the truck. However, after Martin exited the truck, he observed Kimsey leaning forward talking to Evans "and what looked like to be an exchange of what [he] suspected to be narcotics. Specifically, it looked like [Evans] was counting something out in the console area, and [Kimsey] was leaned over watching him do so." After several minutes, Kimsey returned to his car and Martin got back in the truck with Evans. Agent Jones testified that he saw Kimsey put something in his right front pocket and "turn[] as if he may have dropped something" as he exited Evans's truck.

Agent Jones then followed Kimsey's car out of the Walgreens parking lot and initiated a traffic stop after observing Kimsey make an illegal U-turn. He asked Kimsey about what he had observed in the parking lot and whether Kimsey had anything illegal. In response, Kimsey pulled seventeen blue hydrocodone tablets out of his right front pocket. Agent Jones confirmed at trial that Kimsey told him that the hydrocodone pills were for Lane. Agent Jones admitted that he never questioned Lane about the offense.

On cross-examination, Agent Jones testified that he was parked around "forty feet, maybe, fifty feet" away from Evans's truck during the offense and that the CVS parking lot was lower so he had been looking into the truck at an upward angle. He could see to about Evans's and Kimsey's mid-chest level and observed movement down in the console area below the dash line. However, he noted that it was raining on the day of the offense and that he was not 100 percent sure what Evans's hands were doing inside the truck. He conceded that the movement of someone counting pills would have looked the same as the movement of someone scrolling through photographs on their cell phone from where he was parked.

Agent Fairbanks, who had been parked at the back of the Walgreens during the offense, confirmed Agent Jones's observations at trial. He further testified that he followed Evans's truck out of the Walgreens parking lot while Agent Jones pursued

Kimsey's car and initiated a traffic stop upon noticing that Evans was not wearing a seatbelt. During the stop, he advised Evans of what he had observed in the Walgreens parking lot, and Evans denied that a drug transaction had occurred. Agent Fairbanks noted that Evans "was fully cooperative" and consented to a search of his person and his truck. During the search, a plastic pill holder containing two white hydrocodone tablets was recovered from inside Evans's pocket. Moreover, a prescription bottle with Martin's name on it containing sixty-nine hydrocodone tablets was recovered from inside Evans's truck.

On cross-examination, Agent Fairbanks testified that he had been parked about eighty feet away from Kimsey's car during the offense. He also confirmed that the two hydrocodone pills Evans had were a different color than the hydrocodone pills recovered from Martin's pill bottle and Kimsey's pocket. He verified that Evans, Martin, and Kimsey sat together inside the Evans's truck for around five minutes before Martin got into Kimsey's car. He agreed that he could not see inside the truck because it was raining and the truck had dark-tinted windows. He also conceded that there was no money recovered in his search of Evans's truck and that it was possible that there was no money involved in the offense at all.

Britney Lane testified that in early February 2013, she had an abscessed tooth that was causing her pain and she could not afford to go to the dentist. Lane knew that her mother was prescribed pain medication, and she asked her several times for medicine until Martin agreed to give Lane twenty of her hydrocodone pills. On February 10, 2013, Kimsey drove Lane to meet Martin and Evans at the Walgreens Pharmacy in Cleveland. When they arrived, Kimsey got into the truck with Evans and Martin, and Lane stayed in the car with their four-month-old daughter. Lane said that Martin was in the truck with Kimsey and Evans a "[c]ouple of minutes" before she got out to see the baby. After a brief visit, Martin got back into the truck with Evans, and Kimsey returned to his car with the hydrocodone pills Martin had given him. Lane testified that she immediately ingested three of the pills as she and Kimsey were exiting the Walgreens parking lot and that Agent Jones stopped them right after they left Walgreens. She noted that Agent Jones did not question anyone other than Kimsey during the stop.

On cross-examination, Lane testified that she did not have dental insurance in February 2013 and that Kimsey's father eventually paid for her to get her tooth pulled. She explained that she had been to the emergency room a few times before for abscessed teeth but that she could not afford to go at the time of the offense.

Jerry Kimsey, Jeremy Kimsey's father, confirmed that Lane had an abscessed tooth at the time of the offense that was causing her visible discomfort, including

swelling in her face. He noted that the pain made Lane "very upset" and that she "couldn't hardly function."

Evans testified that on February 10, 2013, Martin asked him to drive her to the Walgreens Pharmacy in Cleveland. When they arrived, Martin went inside to fill her hydrocodone prescription, returned to the truck, and counted out the pills she planned to give to Lane. They remained in the parking lot for around fifteen minutes before Kimsey and Lane arrived. He said that Kimsey got in the backseat of his truck, and Martin then handed Kimsey the medicine before she got in the car to visit with Lane. Evans then showed Kimsey photographs on his phone for several minutes until Martin returned. Immediately after Evans drove out of the parking lot, he and Martin were pulled over by Agent Fairbanks. Evans testified that he consented to a search of his truck and even pointed out various compartments that Agent Fairbanks missed because "[he] wanted [Agent Fairbanks] to know [he] wasn't no drug dealer, or Ms. Martin wasn't no drug dealer." He also explained that he had been prescribed hydrocodone after having two back surgeries and that two of his prescription pills were in the pill holder in his front pocket at the time of the offense. He denied that he ever gave hydrocodone pills to Kimsey. However, on cross-examination, he admitted that he knew they were meeting Lane on the day of the offense so that Martin could give Lane some of her prescription hydrocodone pills for a toothache.

Based on the foregoing evidence, the jury acquitted Martin and Evans of the conspiracy to sell or deliver a controlled substance charged in Count 1. However, in Count 2, the jury convicted both Martin and Evans of the lesser-included offense of casual exchange of a controlled substance, a Class A misdemeanor. The jury also imposed a $2,000 fine against Martin and a $750 fine against Evans. The trial court then set the matter for sentencing and a hearing took place on May 11, 2015.

**Sentencing Hearing.** At the hearing, the State entered Martin's presentence report into evidence. The report reflected that Martin had two convictions for prescription fraud, a Class D felony, in McMinn County from January and February 2011, as well as pending charges in Polk County for driving under the influence (DUI) and simple possession. The State introduced certified copies of Martin's 2011 convictions into evidence without objection.

Evans testified that he and Martin had been living together over three years. He explained that Martin had a number of medical issues, including scoliosis, a steel plate in her face, a rod in her neck, and epileptic seizures. He noted that Martin was constantly in pain and that she had sought treatment at a pain management clinic in the past but not recently.

Testifying on her own behalf, Martin explained that she was born with scoliosis, had undergone open-heart surgery at age four, and had undergone multiple foot surgeries. She further testified that there was a steel plate placed in the left side of her face and a steel rod placed in her neck due to injuries she sustained in an automobile accident twenty years prior. She stated that these injuries still caused her discomfort and that she occasionally suffered from epileptic seizures. Martin also noted that she suffered from mental health issues, and she confirmed that she received monthly disability checks based on her physical and mental ailments. Martin conceded that she had two prior convictions for prescription fraud. However, she claimed that the prescriptions at issue in these offenses were for her mother-in-law at the time and her daughter and denied engaging in fraud on either occasion. She testified that she nonetheless pled guilty to these offenses because she "just didn't have the money to fight it" and that she received two years' probation for her convictions.

In regard to her pending charge for DUI, she explained that she was arrested in Polk County in the fall of 2013 when she drove after consuming two Soma pills, a prescription muscle relaxer, that she had left over from an old prescription. On cross-examination, Martin admitted that she knew not to drive after taking Somas, but she noted that she had called her father to pick her up from the store shortly before she was arrested for DUI. Though Martin denied taking any other medications on the day of her arrest, she conceded that her toxicology report revealed several additional medications in her system. On redirect examination, she noted that she had been taking several prescribed medications on a regular basis for years.

Jeremy Kimsey, who elected not to testified at trial, testified at the hearing that Martin, rather than Evans, had given him the hydrocodone tablets found on his person at the time of the offense. He admitted that his prior statement to law enforcement that Evans handed him the pills was a lie. He said that he lied in order to keep Martin from getting into trouble because he knew she had been in trouble before.

Following argument from counsel, the trial court sentenced Martin to eleven months and twenty-nine days, suspended to supervised probation after sixty days of continuous confinement. The court further ordered that Martin undergo an alcohol and drug assessment and pay court costs in addition to the $2,000 fine imposed by the jury. In denying full probation, the trial court reasoned that Martin's credibility was undermined by her attempt to minimize her involvement in her prior prescription fraud convictions. Furthermore, though the court acknowledged Martin's history of health problems, it ultimately found that not imposing confinement would depreciate the seriousness of the offense. The court noted that sharing prescription pills with family members was "reckless and potentially life threatening" and believed that Martin needed to be sent a strong deterrent.

On August 14, 2015, Martin filed a motion to reconsider sentencing, which the court interpreted as a motion for a reduction of sentence under Tennessee Rule of Criminal Procedure 35. The motion asserted that it would be "dangerous" for Martin to be incarcerated for a sixty-day period due to her significant health issues. A hearing on the motion took place on August 21, 2015, at which time Martin introduced a letter from Lori Firestone, a licensed nurse practitioner, that stated the following:

> This letter is to verify that Dava M. Martin has been under my care for the treatment of Major Depressive Disorder, Recurrent Episode, Severe, 296.33 (F33.2) (Active) and Generalized Anxiety Disorder, 300.02 (F41.1) (Active). Currently, she is on Paxil, Xanax, and Remeron. She has been advised of the tapering of Xanax prior to incarceration, but she will need to continue the Paxil and Remeron.

No additional proof was presented. After hearing argument from counsel, the trial court orally denied Martin's motion. The court reasoned that Firestone's letter did not advise against incarceration and that Martin had otherwise failed to show a change in circumstances sufficient to warrant modification of Martin's original sentence. A written order denying relief was subsequently entered on January 19, 2016, nunc pro tunc August 21, 2015. Martin filed a timely notice of appeal on September 15, 2015.

## ANALYSIS

On appeal, Martin asserts that the court erred in denying her motion for a reduced sentence. For the first time on appeal, she argues that the trial court improperly determined that confinement was necessary based the seriousness of the offense and the need for deterrence and that she should have received a fully probated sentence. The State responds that these arguments are waived because Martin failed to raise the issues in a direct appeal of her sentence or in her Rule 35 motion. Alternatively, the State contends that the trial court did not abuse its discretion in declining to reduce Martin's sentence under Rule 35.

Rule 35 provides that "[t]he trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked." Tenn. R. Crim. P. 35(a). However, "[t]he court may reduce a sentence only to one the court could have originally imposed." Tenn. R. Crim. P. 35(b). The trial court may deny Rule 35 relief without conducting a hearing. Tenn. R. Crim. P. 35(c). "The intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice." Tenn. R. Crim. P. 35, Advisory Comm'n Cmts.; see also State v. Hodges, 815 S.W.2d 151, 154 (Tenn. 1991). As such, Rule 35 relief is generally inapt when the defendant has "failed to show that post-sentencing information

or developments ha[ve] arisen to warrant a reduction of his sentence in the interest of justice." State v. McDonald, 893 S.W.2d 945, 948 (Tenn. Crim. App. 1994); see also State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006) (stating in dicta that the Rule 35 standard of review is "whether post-sentencing information or developments have arisen that warrant an alteration in the interest of justice").

An appeal of a Rule 35 motion to reduce sentence is "separate and distinct" from an appeal seeking review of the original judgment, including the initial sentence imposed. Ruiz, 204 S.W.3d at 777 (citing State v. Bilbrey, 816 S.W.2d 71, 75 (Tenn. Crim. App. 1991)). "[A] trial court's denial of a Rule 35 motion is not the equivalent of imposing a sentence but simply reaffirms the sentence previously imposed." Id. Unlike in a direct appeal of the sentence imposed, the standard of review in a Rule 35 appeal is whether the trial court abused its discretion when acting upon the motion. State v. Irick, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993). The trial court abuses its discretion "only when the trial court has applied an incorrect legal standard, or has reached a decision which is illogical or unreasonable and causes an injustice to the party complaining." Ruiz, 204 S.W.3d at 778.

As a preliminary matter, we note that at the Rule 35 motion hearing, the trial court allowed Martin to incorporate by reference all of the proof presented at trial and at sentencing. In doing so, the court allowed Martin to treat her Rule 35 motion as a direct appeal of the original sentence imposed by the trial court. However, as previously noted, Rule 35 specifically examines whether a change in circumstances that occurred after the initial sentence was imposed would warrant a reduction in the interest of justice. See Ruiz, 204 S.W.3d at 778 (citing McDonald, 893 S.W.2d at 948). Thus, the trial court erred to the extent that it relied on proof presented prior to the entry of the judgment of conviction in its disposition of Martin's Rule 35 motion. Despite this error, the trial court did not abuse its discretion in denying relief. The sole claim asserted in Martin's Rule 35 motion was that "she has significant health issues that would make it dangerous for her to be incarcerated for a period of sixty days." In denying Martin's Rule 35 motion for a reduced sentence, the trial court reasoned that Firestone's letter did not advise against incarceration and that Martin otherwise failed to present any proof demonstrating that incarceration posed a danger to Martin's health. Therefore, the court determined that Martin did not establish a change in circumstances that would warrant a modification of her original sentence in the interests of justice. See Ruiz, 204 S.W.3d at 778. Nothing in the record reflects that the trial court abused its discretion in declining to reduce Martin's sentence under Tennessee Rule of Criminal Procedure 35.

Now, Martin claims for the first time that the trial court improperly relied on the seriousness of the offense and deterrence to support a sentence of confinement. As noted by the State, these issues were not previously raised in Martin's Rule 35 motion or argued

at the motion hearing and, consequently, the issues are waived.  See State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (stating that "[o]rdinarily, issues raised for the first time on appeal are waived"); State v. Turner, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995) ("A party may not raise an issue for the first time in the appellate court.").  In addition, Martin's claims relate specifically to the trial court's allegedly improper sentencing at the sentencing hearing, including the court's failure to articulate a valid basis for denying full probation.  The appropriate mechanism for reconsideration of Martin's original sentence is a direct appeal under Tennessee Rule of Appellate Procedure 3.  Here, Martin chose not to file a direct appeal of her sentence, and her arguments on appeal do not otherwise constitute a proper basis for Rule 35 relief.  See Bilbrey, 816 S.W.2d at 75 ("A defendant who fails to appeal from the entry of a judgment of conviction, including the sentence, but who elects to appeal after a Rule 35 motion to reduce sentence has been decided, runs the risk of having failed to preserve any issue regarding the validity of the judgment, being left with only those properly raised in the Rule 35 motion."); see also State v. Kristopher Lee Colbert, No. M2012-00225-CCA-R3-CD, 2012 WL 5543520, at *4 (Tenn. Crim. App. Nov. 9, 2012).

Finally, we note that even had Martin's claims been properly raised, she would still not be entitled to relief.  Tennessee Code Annotated section 40-35-302(b), which governs misdemeanor sentencing, requires a trial court to impose a sentence consistent with the purposes and principles of sentencing.  T.C.A. § 40-35-302(b).  However, trial courts are granted considerable discretion and flexibility in misdemeanor sentencing determinations, and defendants convicted of misdemeanors are not presumed eligible for alternative sentencing.  State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998); see also State v. Combs, 945 S.W.2d 770, 773-74 (Tenn. Crim. App. 1996); State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995).  Likewise, defendants convicted of misdemeanors are not "entitled to the presumption of a minimum sentence."  State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).  The standard of review applied in felony sentences, an abuse of discretion standard with a presumption of reasonableness, has been applied similarly to misdemeanor sentencing determinations.  See, e.g., State v. King, 432 S.W.3d 316, 324 (Tenn. 2014) (citing State v. Bise, 380 S.W.3d 682, 706-07 (Tenn. 2012)); State v. Michael Glen Walsh, No. E2012-00805-CCA-R3-CD, 2013 WL 1636661, at *4 (Tenn. Crim. App. Apr. 17, 2013); State v. Sue Ann Christopher, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at *7 (Tenn. Crim. App. Mar. 14, 2013).

Here, the offense for which Martin was convicted was a Class A misdemeanor, which carries a maximum sentence of eleven months and twenty-nine days.  See T.C.A. §§ 39-17-118(c)(1); 40-35-11(e)(1).  Thus, Martin's sentence was within the appropriate statutory range.  Furthermore, though it was not required to make findings on the record supporting its imposition of a misdemeanor sentence, see Troutman, 979 S.W.2d at 274,

the trial court in the case at bar nonetheless stated at the sentencing hearing that Martin's criminal conduct was "reckless and potentially life threatening" and that a sentence of full probation would depreciate the seriousness of her offense. The court considered Martin's various health issues but discredited her testimony regarding her prior convictions. The court noted that Martin "need[ed] to be sent a strong deterrent" and found that sixty days' incarceration was appropriate based on the record as a whole. Though Martin argues that Martin's offense was "not an offense which deserves a harsh punishment," we conclude that the trial court considered the appropriate purposes and principles of sentencing in ordering Martin to serve sixty days of confinement and the remainder of her sentence on probation. Accordingly, she is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE