# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 28, 2015 Session

## STATE OF TENNESSEE v. RANDALL EVANS

### Appeal from the Criminal Court for Bradley County
No. 13CR462A     Sandra Donaghy, Judge

---

### No. E2015-01815-CCA-R3-CD – Filed September 2, 2016

---

The Defendant-Appellant, Randall Evans, was convicted by a Bradley County jury of one count of casual exchange of a controlled substance. See T.C.A. § 39-17-418. Evans received a sentence of eleven months and twenty-nine days, with fifteen days' incarceration and the remainder on supervised probation, and a $750 fine. He subsequently filed a motion to reconsider his sentence, which the trial court interpreted as a motion for a reduction of sentence pursuant Tennessee Rule of Criminal Procedure 35, and, following a hearing, the motion was denied. The sole issue raised on appeal is whether the trial court improperly denied Evans's motion for sentence reduction. Upon review, the judgment of the trial court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Kenneth L. Miller, Cleveland, Tennessee, for the Defendant-Appellant, Randall Evans.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; R. Steven Bebb, District Attorney General; and Dallas Scott, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This appeal stems from an exchange of prescription narcotics in a Walgreens Pharmacy parking lot in Bradley County. In relation to this offense, Evans and his girlfriend codefendant, Dava Martin, were indicted on one count of conspiracy to sell or deliver a Schedule III controlled substance, a Class E felony, and one count of the sale and delivery of a Schedule III controlled substance, a Class D felony. A jury trial began on February 25, 2015, at which time the following evidence was adduced. On February

10, 2013, Agents Dave Jones and Shawn Fairbanks of the Tenth Judicial District Drug Task Force were conducting surveillance of the Walgreens Pharmacy located on 25th Street in Cleveland, Tennessee. A gold, four-door, Ford F-150 driven by Evans pulled into the parking lot, and Dava Martin exited from the passenger side, walked inside the pharmacy, and returned carrying a white prescription bag. Shortly thereafter, Martin's daughter, Britney Lane, and her boyfriend, Jeremy Kimsey, pulled next to Evans's truck in a white Chevrolet Cavalier. Kimsey, who had been driving, got out of the white car and into the backseat of Evans's truck, and Martin exited the truck and got into the car with Lane.

At that time, Agent Jones was sitting in the parking lot of the CVS Pharmacy across the street and could see inside the front windshield of Evans's truck. He testified at trial that he did not see Martin hand anything to anyone before exiting the truck. However, after Martin exited the truck, he observed Kimsey leaning forward talking to Evans "and what looked like to be an exchange of what [he] suspected to be narcotics. Specifically, it looked like [Evans] was counting something out in the console area, and [Kimsey] was leaned over watching him do so." After several minutes, Kimsey returned to his car and Martin got back in the truck with Evans. Agent Jones testified that he saw Kimsey put something in his right front pocket and "turn[] as if he may have dropped something" as he exited Evans's truck.

Agent Jones then followed Kimsey's car out of the Walgreens parking lot and initiated a traffic stop after observing Kimsey make an illegal U-turn. He asked Kimsey about what he had observed in the parking lot and whether Kimsey had anything illegal. In response, Kimsey pulled seventeen blue hydrocodone tablets out of his right front pocket. Agent Jones confirmed at trial that Kimsey told him that the hydrocodone pills were for Lane but admitted that he never questioned Lane about the offense.

On cross-examination, Agent Jones testified that he was parked around "forty feet, maybe, fifty feet" away from Evans's truck during the offense and that the CVS parking lot was lower so he had been looking into the truck at an upward angle. He could see to about Evans's and Kimsey's mid-chest level and observed movement down in the console area below the dash line. However, he noted that it was raining on the day of the offense and that he was not 100 percent sure what Evans's hands were doing inside the truck. He conceded that the movement of someone counting pills would have looked the same as the movement of someone scrolling through photographs on their cell phone from where he was parked.

Agent Fairbanks, who had been parked at the back of the Walgreens during the offense, confirmed Agent Jones's observations at trial. He further testified that he followed Evans's truck out of the Walgreens parking lot while Agent Jones pursued

Kimsey's car and initiated a traffic stop upon noticing that Evans was not wearing a seatbelt. During the stop, he advised Evans of what he had observed in the Walgreens parking lot, and Evans denied that a drug transaction had occurred. Agent Fairbanks noted that Evans "was fully cooperative" and consented to a search of his person and his truck. During the search, a plastic pill holder containing two white hydrocodone tablets was recovered from inside Evans's pocket. Moreover, a prescription bottle with Martin's name on it containing sixty-nine hydrocodone tablets was recovered from inside Evans's truck.

On cross-examination, Agent Fairbanks testified that he had been parked about eighty feet away from Kimsey's car during the offense. He also confirmed that the two hydrocodone pills Evans had were a different color than the hydrocodone pills recovered from Martin's pill bottle and Kimsey's pocket. He verified that Evans, Martin, and Kimsey sat together inside the Evans's truck for around five minutes before Martin got into Kimsey's car. He agreed that he could not see inside the truck because it was raining and the truck had dark-tinted windows. He also conceded that there was no money recovered in his search of Evans's truck and that it was possible that there was no money involved in the offense at all.

On behalf of the defense, Britney Lane testified that in early February 2013, she had an abscessed tooth that was causing her pain and she could not afford to go to the dentist. Lane knew that her mother was prescribed pain medication, and she asked her several times for medicine until Martin agreed to give Lane twenty of her hydrocodone pills. On February 10, 2013, Kimsey drove Lane to meet Martin and Evans at the Walgreens Pharmacy in Cleveland. When they arrived, Kimsey got into the truck with Evans and Martin, and Lane stayed in the car with their four-month-old daughter. Lane said that Martin was in the truck with Kimsey and Evans a "[c]ouple of minutes" before she got out to see the baby. After a brief visit, Martin got back into the truck with Evans, and Kimsey returned to his car with the hydrocodone pills Martin had given him. Lane testified that she immediately ingested three of the pills as she and Kimsey were exiting the Walgreens parking lot and that Agent Jones stopped them right after they left Walgreens. She noted that Agent Jones did not question anyone other than Kimsey during the stop.

On cross-examination, Lane testified that she did not have dental insurance in February 2013 and that Kimsey's father eventually paid for her to get her tooth pulled. She explained that she had been to the emergency room a few times before for abscessed teeth but that she could not afford to go at the time of the offense.

Evans testified that on February 10, 2013, Martin asked him to drive her to the Walgreens Pharmacy in Cleveland. When they arrived, Martin went inside to fill her

hydrocodone prescription, returned to the truck, and counted out the pills she planned to give to Lane. They remained in the parking lot for around fifteen minutes before Kimsey and Lane arrived. He said that Kimsey got in the backseat of his truck, and Martin then handed Kimsey the medicine before she got in the car to visit with Lane. Evans then showed Kimsey photographs on his phone for several minutes until Martin returned. Immediately after Evans drove out of the parking lot, he and Martin were pulled over by Agent Fairbanks. Evans testified that he consented to a search of his truck and even pointed out various compartments that Agent Fairbanks missed because "[he] wanted [Agent Fairbanks] to know [he] wasn't no drug dealer, or Ms. Martin wasn't no drug dealer." He also explained that he had been prescribed hydrocodone after having two back surgeries and that two of his prescription pills were in the pill holder in his front pocket at the time of the offense. He denied that he ever gave hydrocodone pills to Kimsey. However, on cross-examination, he admitted that he knew they were meeting Lane on the day of the offense so that Martin could give Lane some of her prescription hydrocodone pills for a toothache.

Based on the foregoing evidence, the jury acquitted Evans and Martin of the conspiracy to sell or deliver a controlled substance charged in Count 1. However, in Count 2, the jury convicted both Evans and Martin of the lesser-included offense of casual exchange of a controlled substance, a Class A misdemeanor. The jury also imposed a $750 fine against Evans and a $2,000 fine against Martin. The trial court then set the matter for sentencing and a hearing took place on May 11, 2015.

**Sentencing Hearing.** At the hearing, the State entered Evans's presentence report into evidence but presented no additional proof. The report reflected that Evans had one prior conviction for public intoxication from 1997, which was dismissed upon payment of a $50 fine and court costs. Moreover, Kimsey, who had elected not to testify at trial, testified at the hearing that Martin, rather than Evans, had been the one to hand him the hydrocodone pills. Kimsey also admitted that he lied in his written statement to police because he did not want to get Martin in trouble. Testifying on his own behalf, Evans confirmed he had no additional criminal history other and, on that basis, he requested that the court grant him full probation. At the conclusion of proof, the trial court sentenced Evans to eleven months and twenty-nine days, with fifteen days' incarceration and the remainder on supervised probation. The court allowed Evans to serve his fifteen-day confinement obligation on consecutive weekends in the Bradley County jail. However, the court ordered that Evans undergo an alcohol and drug assessment and pay court costs in addition to the $750 fine imposed by the jury. In denying full probation, the court reasoned that Evans "knew what he was doing; he chose to do it, and he should be held accountable [for] it."

-4-

On August 14, 2015, Evans filed a motion to reconsider sentencing, which the court interpreted as a motion for a reduction of sentence under Tennessee Rule of Criminal Procedure 35. The motion asserted that Evans's sentence should have been fully probated on the basis that he had no prior criminal record other than a public intoxication charge from 1997. A non-evidentiary hearing on the motion took place on August 21, 2015, and a written order denying relief was subsequently entered on January 19, 2016, nunc pro tunc August 21, 2015 . Evans filed a timely notice of appeal on September 15, 2015.

## ANALYSIS

On appeal, Evans contends that the court erred in denying his motion for a reduced sentence. Specifically, he argues that the trial court improperly determined that confinement was necessary based the seriousness of the offense and the need for deterrence and that he should have received a fully probated sentence in light of his lack of criminal history and his minor role in the offense. The State responds that these arguments are waived because Evans failed to raise the issues in a direct appeal of his sentence or in his Rule 35 motion. Alternatively, the State contends that the trial court did not abuse its discretion in declining to reduce Evans's sentence under Rule 35.

Rule 35 provides that "[t]he trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked." Tenn. R. Crim. P. 35(a). However, "[t]he court may reduce a sentence only to one the court could have originally imposed." Tenn. R. Crim. P. 35(b). The trial court may deny Rule 35 relief without conducting a hearing. Tenn. R. Crim. P. 35(c). "The intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice." Tenn. R. Crim. P. 35, Advisory Comm'n Cmts.; see also State v. Hodges, 815 S.W.2d 151, 154 (Tenn. 1991). As such, Rule 35 relief is generally inapt when the defendant has "failed to show that post-sentencing information or developments ha[ve] arisen to warrant a reduction of his sentence in the interest of justice." State v. McDonald, 893 S.W.2d 945, 948 (Tenn. Crim. App. 1994); see also State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006) (stating in dicta that the Rule 35 standard of review is "whether post-sentencing information or developments have arisen that warrant an alteration in the interest of justice").

An appeal of a Rule 35 motion to reduce sentence is "separate and distinct" from an appeal seeking review of the original judgment, including the initial sentence imposed. Ruiz, 204 S.W.3d at 777 (citing State v. Bilbrey, 816 S.W.2d 71, 75 (Tenn. Crim. App. 1991)). "[A] trial court's denial of a Rule 35 motion is not the equivalent of imposing a sentence but simply reaffirms the sentence previously imposed." Id. Unlike in a direct appeal of the sentence imposed, the standard of review in a Rule 35 appeal is whether the

trial court abused its discretion when acting upon the motion. State v. Irick, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993). The trial court abuses its discretion "only when the trial court has applied an incorrect legal standard, or has reached a decision which is illogical or unreasonable and causes an injustice to the party complaining." Ruiz, 204 S.W.3d at 778.

In denying Evans's Rule 35 motion for a reduced sentence, the trial court noted that Evans was the "least culpable" person involved in the offense but nonetheless adopted its previous finding that a fully probated sentence would "take[] away from any deterrence factors." Notably, at the Rule 35 motion hearing, the trial court allowed Evans to incorporate by reference all of the proof presented at trial and at sentencing, and the court incorporated such proof into its reasoning. In doing so, the court allowed Evans to treat his Rule 35 motion as a direct appeal of the original sentence imposed by the trial court. However, as previously noted, Rule 35 specifically examines whether a change in circumstances that occurred after the initial sentence was imposed would warrant a reduction in the interest of justice. See Ruiz, 204 S.W.3d at 778 (citing McDonald, 893 S.W.2d at 948). Thus, the trial court erred in considering proof presented prior to the entry of the judgment of conviction in its disposition of Evans's Rule 35 motion.

Despite this error, we cannot conclude that the trial court abused its discretion in denying relief. The only claim asserted in Evans's Rule 35 motion was that he was entitled to a fully probated sentence based on his lack of criminal history. This issue, which was raised and addressed by the trial court at sentencing, does not constitute a proper basis for relief under Rule 35. Rather, the appropriate mechanism for reconsideration of the evidence from sentencing was in a direct appeal of the judgment under Tennessee Rule of Appellate Procedure 3. Evans chose not to file a direct appeal of his sentence and, to the extent that his claims relied on the proof presented at trial and at sentencing, consideration of those issues was waived. See Bilbrey, 816 S.W.2d at 75 ("A defendant who fails to appeal from the entry of a judgment of conviction, including the sentence, but who elects to appeal after a Rule 35 motion to reduce sentence has been decided, runs the risk of having failed to preserve any issue regarding the validity of the judgment, being left with only those properly raised in the Rule 35 motion."). The record does not reflect, and Evans did not show, that post-sentencing information or developments had arisen that warranted a reduction of his sentence in the interest of justice. See Ruiz, 204 S.W.3d at 778. Accordingly, the trial court did not abuse its discretion in denying relief under Rule 35.

For the first time on appeal, Evans claims that the trial court improperly relied on the seriousness of the offense and deterrence to support a sentence of confinement. As noted by the State, these issues were not previously raised in Evans's Rule 35 motion or argued at the motion hearing and, consequently, the issues are waived. See State v.

Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (stating that "[o]rdinarily, issues raised for the first time on appeal are waived"); State v. Turner, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995) ("A party may not raise an issue for the first time in the appellate court."). In addition, the Evans's arguments on appeal are misplaced in that they do not focus on the abuse of discretion by the trial court in denying his Rule 35 motion. Rather, Evans's claims relate specifically to the trial court's allegedly improper sentencing at the sentencing hearing, including the court's failure to articulate a valid basis for denying full probation. It has already been established that such claims do not constitute a proper basis for Rule 35 relief. See Ruiz, 204 S.W.3d at 777-78; see also State v. Kristopher Lee Colbert, No. M2012-00225-CCA-R3-CD, 2012 WL 5543520, at *4 (Tenn. Crim. App. Nov. 9, 2012).

Finally, we note that even had Evans's claims been properly raised, he would still not be entitled to relief. Tennessee Code Annotated section 40-35-302(b), which governs misdemeanor sentencing, requires a trial court to impose a sentence consistent with the purposes and principles of sentencing. T.C.A. § 40-35-302(b). However, trial courts are granted considerable discretion and flexibility in misdemeanor sentencing determinations, and defendants convicted of misdemeanors are not presumed eligible for alternative sentencing. State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998); see also State v. Combs, 945 S.W.2d 770, 773-74 (Tenn. Crim. App. 1996); State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995). Likewise, defendants convicted of misdemeanors are not "entitled to the presumption of a minimum sentence." State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). The standard of review applied in felony sentences, an abuse of discretion standard with a presumption of reasonableness, has been applied similarly to misdemeanor sentencing determinations. See, e.g., State v. King, 432 S.W.3d 316, 324 (Tenn. 2014) (citing State v. Bise, 380 S.W.3d 682, 706-07 (Tenn. 2012)); State v. Michael Glen Walsh, No. E2012-00805-CCA-R3-CD, 2013 WL 1636661, at *4 (Tenn. Crim. App. Apr. 17, 2013); State v. Sue Ann Christopher, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at *7 (Tenn. Crim. App. Mar. 14, 2013).

Here, the offense for which Evans was convicted was a Class A misdemeanor, which carries a maximum sentence of eleven months and twenty-nine days. See T.C.A. §§ 39-17-118(c)(1); 40-35-11(e)(1). Thus, Evans's sentence was within the appropriate statutory range. Furthermore, though it was not required to make findings on the record supporting its imposition of a misdemeanor sentence, see Troutman, 979 S.W.2d at 274, the trial court in the case at bar nonetheless stated at the sentencing hearing that "[Evans] knew what he was doing; he chose to do it, and he should be held accountable to it." At the Rule 35 motion hearing, the court reaffirmed its previous finding "that absent jail time, . . . it takes away from any deterrence factors." See T.C.A. § 40-35-103(1)(B). The court considered the mitigating circumstances, including Evans's lack of criminal history,

consistent work record, and minimal role in the offense, but nonetheless determined that incarceration was appropriate based on the record as a whole. Though Evans maintains that the trial court did not adequately justify its denial of full probation, we conclude that the trial court considered the appropriate purposes and principles of sentencing in ordering Evans to serve fifteen days of confinement and the remainder of his sentence on probation. Moreover, nothing in the record reflects that the trial court abused its discretion in declining to reduce Evans's sentence under Tennessee Rule of Criminal Procedure 35. Accordingly, he is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE