IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 19, 2018 Session

## STATE OF TENNESSEE v. AREANNA O. LLOYD

**Appeal from the Circuit Court for Rutherford County**
No. F-75770C        Royce Taylor, Judge

_____

### No. M2017-01919-CCA-R3-CD
_____

Defendant, Areanna O. Lloyd, entered guilty pleas to two counts of robbery in concert with two or more others in violation of Tennessee Code Annotated sections 39-13-401 and 39-12-302, Class B felonies, and pursuant to the plea agreement was sentenced to concurrent terms of seven years, two months, and twelve days, in the Tennessee Department of Correction ("TDOC") as a mitigated offender with release eligibility after service of twenty percent of the sentence. After Defendant was denied parole, she filed a "Petition for Suspended Sentence" ("the petition"). Following a hearing, the trial court determined that it did not have jurisdiction over Defendant's sentence and denied the petition. Defendant then filed a "Motion to Reconsider" ("the motion"), arguing that she had remained incarcerated in Rutherford County and was never transferred to the physical custody of TDOC, and therefore, the trial court retained "full jurisdiction over the manner of [D]efendant's sentence service" pursuant to Tennessee Code Annotated section 40-35-212(c) and (d)(1). Following a second hearing, the trial court granted the petition and ordered Defendant to serve the balance of her sentence on supervised probation, and the State filed the instant appeal. After a thorough review of the record and applicable law, we determine that the trial court did not abuse its discretion by suspending the balance of the sentence service and placing her on probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined. TIMOTHY L. EASTER, J., filed a separate dissenting opinion.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Jennings H. Jones, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellant, State of Tennessee.

John G. Mitchell, III (at hearing and on appeal) and Johnathon C. Hershman (on appeal), Murfreesboro, Tennessee, for the appellee.

## OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

### *Indictment and Guilty Plea*

Defendant and co-defendants Jarol Noel Jiminez and Devon Rydell Frazier were indicted for three counts of aggravated robbery and three counts of "robbery in concert with two or more others." The victims were pizza delivery drivers.

On October 18, 2016, Mr. Jiminez pled guilty to three counts of aggravated robbery and was sentenced to concurrent sentences of eight years in TDOC as a standard offender with release eligibility after service of eighty-five percent on each count.

On October 25, 2016, Defendant pled guilty to two counts of robbery in concert with two or more others in violation of Tennessee Code Annotated sections 39-13-401 and 39-12-302. The plea agreement specified that the remaining counts of the indictment would be dismissed and that Defendant would receive a sentence of "7 years and 73 days" as an especially mitigated offender with release eligibility after service of twenty percent of the sentence. The State informed the trial court that Defendant was "given this plea bargain . . . because she cooperated with law enforcement authorities in testifying against the juvenile co-defendant in Juvenile Court" and received a "grant of immunity."

On January 23, 2017, Mr. Frazier pled guilty to two counts of aggravated robbery and was sentenced to concurrent sentences of eight years in TDOC as a standard offender with release eligibility after service of eighty-five percent on each count.

### *Procedural History*

On June 26, 2017, Defendant filed the petition claiming that, "[i]n April, 2017, [D]efendant was denied parole, and was informed she would not again be eligible for consideration for parole until April, 2020." The trial court conducted a hearing on the petition on July 24, 2017. No witnesses were called. Following legal arguments, the trial court announced:

> I'm going to rule in the State's favor that I don't have jurisdiction at this point since she's sentenced to the TDOC. And the Parole Board would be

the ones that would determine her eligibility for release at this time and not this Court.

Based on the determination that it did not have jurisdiction, the trial court denied the petition on July 25, 2017.

Defendant filed the motion on August 1, 2017, alleging that the trial court had jurisdiction pursuant to Tennessee Code Annotated section 40-35-212 because Defendant "ha[d] been continuously housed in the Rutherford County Adult Detention Center since her sentence was imposed by this [c]ourt." The State opposed the motion.

Before testimony began at the August 30, 2017 hearing, the following dialogue occurred:

> [THE STATE]: Judge, reading the cases that I cited to the Court, it appears that in a negotiated sentence that the Court only has the authority under the same standard as Rule 35, which is some post sentence change in circumstances that was unforeseen to both parties.
>
> And those examples were cited in the Court as being -- in the memorandum -- that were rejected by the Court of Criminal Appeals that addressed those that these are not post judgment unforeseen circumstances, such as being denied rehabilitative programs and the like.
>
> Judge, the parole board had a very good reason probably in denying parole. Matters of which may not be before the Court.
>
> [THE COURT]: Well, that's what I'm wanting to know if they need to be brought to the Court. The Court under this statute -- it says, she can petition if she is denied parole.

Defendant was the only witness called to testify. She stated that she reported for service of her sentence in October 2016 following the entry of her guilty plea. The following dialogue is from the direct examination of Defendant:

> Q. And you have already been seen by the Parole Board?
> A. Yes, sir.
> Q. And when was that?

A. It was April 11th of 2017.[1]
Q. So, four months ago?
A. Yes, sir.
Q. And their decision was what?
A. To set me off 36 months because I was high risk.
Q. As a mitigated offender, they deemed you to be high risk?
A. Yes, sir.
Q. Did they give you any indication as to why that is?
A. No, sir. I asked why I was high risk. And she told me that the Parole Board -- or the parole hearing was over.
THE COURT: Said what now?
THE WITNESS: She said that the parole hearing was over when I asked her why I was a high risk.

She testified that she had taken advantage of prison-based programs like "Reformers Unanimous International" and "Keeping Connected." Defendant admitted "full responsibility" for her actions that led to her convictions but was of the opinion that "jail [wa]sn't helping [her] to better [her]self." Defendant told the trial court that she "want[ed] the opportunity to make up" for what she deemed "a big mistake."

### *Order Granting the Motion to Reconsider Application*

On September 1, 2017, the trial court entered an order finding that it had jurisdiction over Defendant pursuant to Tennessee Code Annotated section 40-35-212. The trial court determined that Defendant was eligible for probation "as part of her agreed upon sentence and the [c]ourt had the authority pursuant to T.C.A. § 40-35-501 to grant probation." The trial court determined that Defendant was "an appropriate candidate for probation" and suspended the balance of Defendant's sentence to probation.

The State filed a timely notice of appeal pursuant to Tennessee Rule of Appellate Procedure 3(c).

### ANALYSIS

On appeal, the State argues that the trial court abused its discretion by suspending Defendant's sentence and placing her on probation. Specifically, the State argues that the trial court improperly applied jurisdiction under Tennessee Code Annotated section 40-35-501(a)(6)(B) and Tennessee Code Annotated section 40-35-212. Defendant, on the

---

[1] The record does not indicate how the parole board calculated Defendant's release eligibility date, what "sentencing credits were earned and retained" by Defendant, or why the parole board selected April 11, 2017, as the hearing date. See Tenn. Code Ann. § 40-35-501(b).

other hand, argues that the trial court "properly used its continuing jurisdiction and discretion in granting the application for suspended sentence under T[ennessee] C[ode] A[nnotated section] 40-35-212 and T[ennessee] C[ode] A[nnotated section] 40-35-501(a)(6)(B)."

### *Jurisdiction*

Tennessee Code Annotated section 40-35-212 provides:

> (a) In imposing a sentence, the court shall determine under what conditions a sentence will be served as provided by law. A defendant may be sentenced to the department of correction unless prohibited by § 40-35-104(b).
>
> . . . .
>
> (c) *Unless the defendant receives a sentence in the department, the court shall retain full jurisdiction over the manner of the defendant's sentence service.*
>
> (d)(1) *Notwithstanding subsection (c), the court shall retain full jurisdiction over a defendant sentenced to the department during the time the defendant is being housed in a local jail or workhouse awaiting transfer to the department. The jurisdiction shall continue until the defendant is actually transferred to the physical custody of the department.*

Tenn. Code Ann. § 40-35-212(a), (c), (d)(1) (2017) (emphasis added).

The Sentencing Commission Comments to section 40-35-212 provide:

> Subsections (c) and (d) provide that the judge has full jurisdiction to modify the terms and conditions of *any* sentence unless the defendant has been sentenced to the department. There are two exceptions. *First, the trial judge may modify the sentence for a defendant sentenced to the department where the defendant is awaiting transportation to the department.* Second, as provided in § 40-35-319(b), sentences may be modified pursuant to Tenn. R. Crim. P. 35(b), which permits modifications within 120 days of sentencing.

Tenn. Code Ann. § 40-35-212 (2017), Sentencing Comm'n Cmts. (emphasis added).

Tennessee Code Annotated section 40-35-212 was amended in 1988 to add what is now subsection (d)(1).[2]  The "legislative purpose" of 40-35-212(d) was "to help ease prison overcrowding by clearing the way for trial judges to probate otherwise eligible persons despite their sentences to the Department of Correction and notwithstanding their being housed in a local facility awaiting transfer." *State v. Charles Alvin Haney*, No. C.C.A. 839, 1989 WL 28729, at *2 (Tenn. Crim. App. Mar. 29, 1989).

The State concedes in its brief that section 40-35-212 gives the trial court jurisdiction in some circumstances but argues that the statute "does not establish jurisdiction when a defendant is housed in a local facility under contract to house TDOC inmates."  The State argues that this court's opinion in *State v. Amanda Hope McGill*, No. E2013-02069-CCA-R3-CD, 2014 WL 2854174 (Tenn. Crim. App. June 20, 2014), *no perm. app. filed*, supports their argument that the trial court had no jurisdiction to modify Defendant's sentence.  We disagree.  In *Amanda Hope McGill*, the defendant was originally housed in the Sullivan County Jail but was then transferred to the work camp at the Johnson City Women's Facility, a facility located in Washington County that was under contract with TDOC to house certain TDOC inmates. *Id.* at *1-2.  The defendant's physical custody was transferred to TDOC during her appeal. *Id.* at *1 n.2.

Defendant was originally incarcerated in Rutherford County, she remained incarcerated in Rutherford County through the time the petition was filed, and her physical custody was never transferred to TDOC.  Therefore, we determine that the trial court had full jurisdiction over Defendant pursuant to Tennessee Code Annotated section 40-35-212(d)(1). *See State v. Edenfield*, 299 S.W.3d 344, 346 (Tenn. Crim. App. 2009) ("In contrast to Rule 35, Tennessee Code Annotated section 40-35-212 only permits the trial court to modify a Department of Correction sentence for a defendant who is held locally and has not been transferred to the penitentiary.").

### *Standard of Review*

Tennessee Code Annotated section 40-35-212 "grants the sentencing court substantial discretion to determine where and under what conditions a sentence will be served as provided by law." *State v. Moss*, 727 S.W.2d 229, 238 (Tenn. 1986) (internal citations and quotation marks omitted).  This court reviews the trial court's decision to suspend Defendant's sentence service under an abuse of discretion standard. *State v. Ruiz*, 204 S.W.3d 772, 777 (Tenn. 2006).  We will "find that a trial court has abused its discretion only when the trial court has applied an incorrect legal standard, or has reached

---

[2] *See* Act of March 9, 1988, ch. 556, 1988 Tennessee Public Acts 129.  Section 40-35-212(d)(2) was added in 2005.

a decision which is illogical or unreasonable and causes an injustice to the party complaining." *Id*. at 778 (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)).

### *Authority of Trial Court to Suspend Defendant's Sentence Service*

Having found that the trial court retained "full jurisdiction" over Defendant, we must next determine if the court had the power to alter a final judgment that imposed a TDOC sentence.

Tennessee Code Annotated section 40-35-501 provides the release eligibility requirements for inmates housed in TDOC. We determine that the trial court erred in determining that it had authority to modify the Defendant's sentence pursuant section 40-35-501(a)(6). Generally, "inmates with felony sentences of two (2) years or less shall have the remainder of their original sentence suspended upon reaching their release eligibility date" and shall be placed on probation. Tenn. Code Ann. § 40-35-501(a)(4)(5). Before suspending an inmate's sentence of two (2) years or less and placing the inmate on probation, TDOC must "notify the district attorney general and the appropriate sheriff, jail administrator, workhouse superintendent or warden of the release eligibility date" thereby allowing the notified party an opportunity to file a petition with the sentencing court requesting denial of suspension of sentence based on disciplinary violations during time served in the institution." Tenn. Code Ann. § 501(a)(6)(A). After a petition requesting denial is filed, the trial court shall conduct a "hearing to determine the merits of the petition." The trial court then has the authority to deny "suspension for the remainder of the sentence or any portion of the sentence." Tenn. Code Ann. § 501(a)(6)(B). Tennessee Code Annotated section 40-35-501 does not authorize the trial court to suspend the sentence of any inmate nor does it authorize the trial court to place an inmate on probation.

Next, we determine that the trial court could not suspend Defendant's sentence and order "the balance of the sentence served on probation supervision" pursuant to Tennessee Code Annotated section 40-35-306(c) because Defendant was not sentenced to "a period of continuous confinement." Section 40-35-306 applies only to sentences of split confinement in which "[a] defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the local jail or workhouse[.]" Tenn. Code Ann. § 40-35-306(a).

Finally, we note that the trial court did not have the authority to modify the Defendant's sentence pursuant to Tennessee Rule of Criminal Procedure 35 because the petition was not "filed within 120 days after the date the sentence is imposed or probation is revoked." Tenn. R. Crim. P. 35(a). Defendant was sentenced on October 25, 2016,

and the petition was filed June 26, 2017, well after the period of time during which Defendant had a right to seek a modification of her sentence pursuant to Rule 35.

Although not raised by Defendant or the State, we will address the trial court's authority to suspend Defendant's sentence and place her on probation under Tennessee Code Annotated section 40-35-303, which governs probation and provides in pertinent part:

> (a) A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-213(a)(2), § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005. A defendant shall also be eligible for probation pursuant to § 40-36-106(e)(3).

> . . . .

> (e) *Probation shall be granted,* if at all, at the time of the sentencing hearing except for sentences served in a local jail or workhouse, or except *during the time a defendant sentenced to the department of correction is being housed in a local jail or workhouse awaiting transfer to the department as provided in § 40-35-212(d).*

> . . . .

> (g) The powers granted in this section shall be exercised by the *judge of the trial court presiding at the trial* of original conviction or by any successor judge holding court in that jurisdiction.

Tenn. Code Ann. § 40-35-303(a), (e), (g) (2017) (emphasis added). Defendant pled guilty to two counts of robbery in concert with two or more others in violation of Tennessee Code Annotated sections 39-13-401 and 39-12-302. She was sentenced to less than ten years. Defendant was eligible for probation at the time she was sentenced by the trial court.

We determine that the "trial court presiding at the trial of original conviction" has the authority to suspend a TDOC sentence of an eligible defendant and to place that defendant on probation "during the time a defendant sentenced to the department of correction is being housed in a local jail or workhouse awaiting transfer to the department as provided in § 40-35-212(d)". *See* Tenn. Code Ann. § 40-35-303(e), (g). We also

determine that the phrase "the judge of the trial court presiding at the trial" in section 40-35-303(g) encompasses the judge of the trial court presiding over the guilty plea and sentencing of a defendant. *See State v. Karon L. Washington*, No. 02C-01-9510-CC-00306, 1996 WL 417653, at *1 (Tenn. Crim. App. July 26, 1996).

In *Karon L. Washington*, the defendant entered a guilty plea in Madison County and was sentenced "pursuant to a plea bargain agreement" to an effective two-year sentence to be served consecutively to a prior Texas sentence. *Id.* Before she began serving her Tennessee sentence, the defendant was arrested in Shelby County and extradited to Missouri. After Tennessee filed a detainer, Missouri returned the defendant to Madison County. Approximately two years after pleading guilty and while housed locally in Madison County and awaiting transfer to TDOC, the defendant filed a "Motion to Amend Judgment" that asked the trial court to order her "Tennessee sentences to be served concurrently with the Missouri sentences." *Id.* Following a hearing, the trial court initially determined that it did not "have any authority" to amend the final judgment of conviction. *Id.* After a second hearing, the trial court altered the defendant's sentences by ordering her immediate release and placing her on probation. *Id.* at *2. The State appealed. In determining that the trial court had jurisdiction to alter the sentences of the defendant under section 40-35-212 and section 40-35-303(e), this court stated:

> Before a trial court may grant probation to an accused who has been sentenced to the Department of Correction and is awaiting transfer, (a) the trial court must have jurisdiction to enter the judgment, (b) the accused must be confined to the county jail or workhouse, (c) the nature of the offense and the length of the sentence do not bar probation, and (d) it is in the best interest of society and the accused to grant the accused probation. If these prerequisites are present, the trial court may grant the accused probation.

*Id.* at *3. The court determined that "all of the essential prerequisites were met" and that "neither the length of the sentences nor the nature of the offenses barred the suspension of the sentences and placing [the defendant] on probation" and that, "[g]iven these circumstances, the trial court clearly had jurisdiction to grant the relief it gave to [the defendant]." *Id.* The court then stated that "[t]he only question that remains to be answered is whether [the defendant] was a fit person for probation, and probation was in the best interest of society and [the defendant]." *Id.* at *4. The court affirmed the trial court's judgment suspending the defendant's sentence and placing her on probation. *Id.*

We hold that the trial court had full jurisdiction over the defendant pursuant to Tennessee Code Annotated section 40-35-212(d)(1) and that the court had the authority pursuant to Tennessee Code Annotated section 40-35-303(e) to suspend the defendant's

sentence and place her on probation. Next we will determine if the trial court applied the proper legal standard in the exercise of that authority.

### Legal Standard for Evaluating Petitions Filed Pursuant to Tennessee Code Annotated Section 40-35-303(e)

We have found no cases establishing the applicable legal standard that a trial court must utilize in determining whether to suspend a TDOC sentence and place a defendant on probation pursuant to section 40-35-303(e). We therefore turn to other post-sentencing cases in which a trial court altered or modified a defendant's sentence after the judgment of conviction became final. In doing so, we will trace the development of the applicable legal standard for evaluating an application filed pursuant to section 40-35-306(c) and a motion filed pursuant to Rule 35(a) over the last thirty-plus years.

In *State v. Ruiz*, the supreme court stated that "an application to suspend the balance of a sentence" filed pursuant to section 40-35-306(c) "is akin to a motion to reduce a sentence" filed pursuant to Rule 35. *Ruiz*, 204 S.W.3d at 777. We determine that a petition filed pursuant to section 40-35-303(e) is akin to an application filed pursuant to section 40-35-306(c) and a motion filed pursuant to Rule 35.

The first supreme court opinion that we have found that discussed a Rule 35(a) motion in the context of a sentence entered as the result of a plea agreement was *State v. Hodges,* 815 S.W.2d 151, 154 (Tenn. 1991)*,* a four-to-one decision in which the majority stated that "[t]here is absolutely no connection between the plea bargaining procedures prescribed in Tenn. R. Crim. P. 11 and the correction or reduction of sentence provisions of Tenn. R. Crim. P. 35." The dissent in *Hodges* strongly criticized the majority's holding that Rule 35(b) gives the trial court "unfettered discretion to modify a sentence" entered pursuant to a plea agreement. *Id.* at 155 (Daughtrey, J., dissenting).

Two years after *Hodges*, the supreme court issued *State v. Grady Hargrove*, Nos. 01S01-9203-CC-00035, 01S019203-CC-00036, 03S01-9203-CR-00026, 1993 WL 300759, at *2 (Tenn. Aug. 9, 1993), *reh'g denied* (Tenn. Sept. 27, 1993)).[3] In *Grady Hargrove,* the court "consolidated [] three cases for argument in order to determine the scope of authority of an appellate court to alter the terms of a sentence that was imposed as the result of an agreed guilty plea in the trial court." *Id.* at *1. Like *Hodges*, *Grady Hargrove* was a four-to-one decision, with the majority opinion authored by the justice who authored the dissent in *Hodges*. *Id.* The majority in *Grady Hargrove* stated "that as

---

[3] We note that at the top of the first page of *Grady Hargrove* the following appears: "Only the Westlaw citation is currently available. NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL."

the opinion in *Hodges* suggests, the scope of Rule 35(b) is *limited* in those cases in which the defendant has pleaded guilty by agreement with the state, in exchange for a specific sentence." *Id.* at *2 (emphasis added). The dissenting opinion in *Grady Hargrove*, authored by the justice who authored the majority opinion in *Hodges*, claimed that *Hodges* did not in any way limit Rule 35 in cases in which the plea was entered as a result of a plea agreement. *Id.* at *3-4 (O'Brien, J., dissenting).

One year after *Grady Hargrove* was issued, this court noted in *State v. McDonald*:

While *Hargrove* does not expressly provide the limits of Rule 35(b), it strongly suggests that an alteration of a defendant's sentence is generally prohibited if it violates the plea agreement entered into under Rule 11(e)(1)(C).[4] . . .

Although the court in [*Grady*] *Hargrove* limited the scope of Rule 35(b), we do not find that this limitation results in the waiver of Rule 35(b) motions in cases where a defendant pleads guilty pursuant to Rule 11(e)(1)(C). *For example*, a situation may arise where *unforeseen, post-sentencing developments* would permit modification of a sentence in the interest of justice.

893 S.W.2d 945, 947 (Tenn. Crim. App. 1994) (emphasis added) (footnote added).

In *State v. Ernesto Gonsales*, this court, citing *McDonald* and *Grady Hargrove*, reversed a trial court's Rule 35 modification of a defendant's plea-bargained sentence holding that, "[b]ecause the trial court was aware of the I[mmigration and] N[aturalization] S[ervice] hold prior to accepting the plea and sentencing the defendant to a six-year term, there were no *unusual or unforeseen circumstances* taken into consideration by the order of modification." No. E2002-02687-CCA-R3-CD, 2003 WL 22697299, at *6 (Tenn. Crim. App. Nov. 14, 2003) (emphasis added), *no perm. app. filed*.

*Ruiz* is the only supreme court opinion after *Hodges* and *Grady Hargrove* to address the applicable legal standard for evaluating an application to suspend sentence

---

[4] Rule 11(e)(1)(C) has been renumbered and is now Rule 11(c)(1)(C). Rule 11(c)(1)(C) states that "[t]he district attorney general and the defendant's attorney, or the defendant when acting pro se, may discuss and reach a plea agreement. The court shall not participate in these discussions." Tenn. R. Crim. P. 11(c)(1). The Rule also states that "[i]f the defendant pleads guilty or nolo contendere to a charged offense or a lesser or related offense, the plea agreement may specify that the district attorney general will[] . . . agree that a specific sentence is the appropriate disposition of the case." Tenn. R. Crim. P. 11(c)(1)(C).

service under section 40-35-306(c) or a motion to reduce sentence under Rule 35. *Ruiz* involved an application to suspend the balance of a sentence that resulted from a guilty plea entered with no agreement as to the sentence. *Ruiz,* 204 S.W.3d at 775. In *Ruiz,* the court noted that "[t]he Advisory Commission Comments to [Rule 35] provide that '[t]he intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice.'" *Id.* at 778 (citing Tenn. R. Crim. P. 35, Advisory Comm'n Cmts.) (last alteration in original). The court then commented that:

> This [c]ourt, too, has recognized that "[t]he intent of Rule 35(b) is to allow modification in circumstances where an alteration of the sentence may be proper in the interest of justice." *State v. Hodges*, 815 S.W.2d 151, 154 (Tenn. 1991). Indeed, the Court of Criminal Appeals has affirmed a trial court's denial of a Rule 35 motion where the defendant "failed to show that post-sentencing information or developments had arisen to warrant a reduction of his sentence in the interest of justice." *State v. McDonald*, 893 S.W.2d 945, 948 (Tenn. Crim. App. 1994).

*Id.* The *Ruiz* court, in what it characterized as a case of first impression, held

> that the applicable legal standard for evaluating applications to suspend the balance of a sentence, made pursuant to Tennessee Code Annotated section 40-35-306(c), is the same as that applied to a motion to reduce sentence: *whether post-sentencing information or developments have arisen that warrant an alteration in the interest of justice.*

*Id.* (emphasis added).

We note that *Ruiz* did not reference or cite to *Grady Hargrove,* did not use the word "unforeseen" in the legal standard even though it quoted from and cited to *McDonald*, and did not specifically limit the applicable legal standard only to cases involving sentences that resulted from a guilty plea entered pursuant to Tennessee Rule of Criminal Procedure 11(c)(1)(C). Even though the *Ruiz* opinion did not use the word "unforeseen" in the legal standard, the supreme court did indicate that more than *expected* post-sentencing information or developments were needed to support a section 40-35-306(c) application:

> In this case, the only proof of post-sentencing circumstances offered in support of Defendant's application was a stipulation to the effect that Defendant was abiding by the terms of his confinement and work release. Of course, defendants are *expected* to comply with the terms of their

sentences, and a defendant's compliance is not, in and of itself, a sufficient development to require that he or she be placed on probation earlier than initially ordered. . . . Accordingly, *the trial court did not apply an incorrect legal standard when it declined to grant Defendant's application on the basis of this proof alone*.

*Id.* (emphasis added).

To successfully support a section 40-35-306(c) application or a Rule 35 motion, a defendant must prove that more than expected post-sentencing circumstances or developments have occurred. *Roget's Thesaurus* includes as synonyms for expected: anticipated, awaited, contemplated, foreseen, and predictable. "Unforeseen, post-sentencing developments," like the example in *McDonald*, or "unusual or unforeseen circumstances" mentioned in *Ernesto Gonsales*, are examples of things that are not expected. Therefore, a trial court must first determine whether an applicant or movant has presented sufficient proof to show that post-sentencing developments or circumstances that were not expected have occurred. Then, the trial court must determine the interest of justice, if those unexpected post-sentencing developments or circumstances warrant an alteration of sentence service or a modification of the sentence.

We hold in a case of first impression that the applicable legal standard a trial court must use to determine whether to suspend a TDOC sentence and place a defendant on probation pursuant to Section 40-35-303(e) is the standard established in *Ruiz* for an application under Tennessee Code Annotated section 40-35-306(c) and a petition under Tennessee Rule of Criminal Procedure 35—"whether post-sentencing information or developments have arisen that warrant an alteration in the interest of justice." *Ruiz,* 204 S.W.3d at 778. We also hold that a defendant must show that the post-sentencing information or developments were more than simply what was expected, for example a defendant could show that the post-sentencing information or developments were unexpected, unforeseen, or unanticipated.

In this case, Defendant entered her plea of guilty pursuant to Rule 11(c)(1)(C) of the Tennessee Rules of Criminal Procedure. The State and Defendant agreed to a specific sentence of seven years, two months, and twelve days to be served in TDOC, as an especially mitigated offender with a release eligibility after service of twenty percent of the sentence. The sentence was accepted and placed into effect by the trial court.

At the hearing on her petition, Defendant testified that she was denied parole on April 11, 2017. She testified that the parole board "set me off 36 months because I was a high risk." That testimony corresponded to the claim made in the petition that she was informed by the parole board her that she would not be eligible for parole until April of

2020. She testified that she took advantage of the programs available to her at the facility in which she was incarcerated and introduced several certificates showing that she had successfully completed those programs.[5] The State offered no proof to contradict or rebut Defendant's testimony concerning this post-sentencing development or to explain the actions of the parole board.

Having accepted the guilty pleas of Defendant and her co-defendants, the trial court was in a position to know the background and relevant facts of the cases and to weigh the degree of culpability among the three co-defendants. Based on the unrebutted proof before the trial court, the parole board based its decision to deny parole on the underlying nature of the offenses committed by Defendant. The nature of the offenses was known to the State and Defendant at the time the plea agreement was reached and was known to the trial court when the plea was accepted. The following exchange from the hearing on the motion to reconsider demonstrates the trial court's concern about Defendant being denied parole:

> THE COURT: Well, what about this provision about for review after a denial of parole? Don't I have the right to do that? She's reached her release eligibility date and [was] denied parole as I understand it. On this, I can review it and then determine whether to suspend the sentence or not.
>
> [THE STATE]: Judge, reading the cases that I cited to the [c]ourt, it appears that in a negotiated sentence that the [c]ourt only has the authority under the same standard as Rule 35, which is some post[-]sentence change in circumstances that was unforeseen to both parties. Judge, the parole board had a very good reason probably in denying parole. Matters of which may not be before the [c]ourt.

From the above exchange, we infer that the trial court did not *expect* Defendant to be denied of parole. The unrebutted proof before the trial court was that the parole board, based on information that was available to the State, Defendant, and the trial court at the time the guilty plea was entered and accepted effectively tripled the length of time Defendant was required to serve in incarceration before she was eligible for release on parole. We infer from the trial court's statements and its order that the parole board's decision was not what the trial court expected. "[A]n appellate court should find that a trial court has abused its discretion only when the trial court has applied an incorrect legal standard, or has reached a decision which is illogical or unreasonable and causes an

---

[5] Three "Certificate[s] of Achievement" from the Reformers Institutional Program, a certificate showing that Defendant participated in "My Relationship with God- SALT," and a "300 Club Breaking the Chain of Addiction" certificate for participating in June 2017 in "Reformers Unanimous International" were introduced as exhibits to Defendant's testimony.

injustice to the party complaining." *Ruiz*, 204 S.W.3d at 778 (citing *Howell*, 185 S.W.3d at 337). We determine that the trial court did not apply an incorrect legal standard, that its decision was not illogical or unreasonable, and that its decision did not cause an injustice to the State, which had negotiated to have Defendant plead guilty and be sentenced as a mitigated offender with a twenty percent release eligibility date.

## CONCLUSION

We hold that the trial court did not abuse its discretion in determining that post-sentencing developments warranted the suspension of Defendant's sentence in the interest of justice. Therefore, we affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE